Adam Hosmer-Henner, Esq. (NSBN 12779)
Philip Mannelly, Esq. (NSBN 14236)
Chelsea Latino, Esq. (NSBN 14227)
McDONALD CARANO LLP
100 W. Liberty Street, Tenth Floor
Reno, NV 89501
(775) 788-2000
ahosmerhenner@mcdonaldcarano.com
pmannelly@mcdonaldcarano.com
clatino@mcdonaldcarano.com

Maggie McLetchie (NSBN 10931)
Alina Shell, Esq. (NSBN 11711)
McLETCHIE LAW
701 E. Bridger Ave., Suite 520
Las Vegas, NV 89101
(702) 728-5300
maggie@nvlitigation.com
alina@nvlitigation.com

*Attorneys for Marty Scott Fitzgerald, Elizabeth Carley,*
*Donald Savage, Howard White, Carl Olsen,*
*Scott Bedard, Stephen Ciolino and Mitchell Fields, individually*
*and on behalf of a class of similarly situated persons*

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

* * * * *

| | |
|---|---|
| IN RE: HCV PRISON LITIGATION | Case No:  3:19-cv-00577-MMD-CLB |
| This document relates to: | **AMENDED CLASS ACTION COMPLAINT** |
| **ALL ACTIONS** | |

### AMENDED CLASS ACTION COMPLAINT

1.     Plaintiffs Marty Scott Fitzgerald, Elizabeth Carley, Donald Savage, Howard White, Carl Olsen, Scott Bedard, Stephen Ciolino and Mitchell Fields ("Plaintiffs"), on behalf of themselves and others similarly situated, bring this class action lawsuit pursuant to the Court's Order (ECF No. 1). Plaintiffs seek declaratory and injunctive relief, and to certify a class seeking the same, from the State of Nevada's practice of withholding or delaying curative treatment to

inmates with chronic Hepatitis C Virus ("HCV") without medical justification. This curative treatment is commonly referred to as direct-acting antiviral treatment ("DAA").

2. After the consolidation of this litigation on October 9, 2019, and less than three weeks prior to the date set for the filing of this pleading and the hearing that was set in this matter, the Nevada Department of Corrections amended its medical policies to purportedly expand access to curative HCV treatment. **Exhibit 1**, Medical Directive 219, Eff. Nov. 15, 2019. This appears to be some progress as the revised Medical Directive 219 ("MD 219") now requires HCV testing for all inmates during the intake process and seems to provide access to HCV treatment without some of the previous barriers that existed. However, the new MD 219 only represents theoretical improvement. There is not a medical justification for delaying curative treatment, through the various priority categories established in MD 219, as the medical standard of care is to provide this curative treatment to individuals in any of the three listed categories.

3. HCV is a widespread contagious liver disease and Defendants are aware that withholding or delaying curative DAA treatment can lead to irreversible liver damage, prolonged suffering, and death.

## JURISDICTION AND VENUE

4. Plaintiffs bring this action under 42 U.S.C. § 1983, the Eighth and Fourteenth Amendments to the United States Constitution, the Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12101, et seq, and the Equal Protection Clause of the Fourteenth Amendments to the U.S. Constitution via 42 U.S.C. § 1983.

5. Jurisdiction is proper under 28 U.S.C. § 1331 and 28 U.S.C. § 1343(a)(3).

6. Venue is proper under 28 U.S.C. § 1391(b)(1) and (2), because the events that gave rise to this cause of action—the formulation and execution of the versions of MD 219—occurred in Nevada and the Defendants reside in Nevada.

7. Plaintiffs seek a preliminary and permanent injunction pursuant to Federal Rule of Civil Procedure 65.

//

//

2

**PLAINTIFFS**

1.      Plaintiff Elizabeth Carley is currently incarcerated at the Florence McClure Women's Correctional Center Facility in Las Vegas, Nevada, where medical care is administered by Defendants. Ms. Carley is in the legal custody and control of NDOC and has been diagnosed with chronic HCV. Defendants have repeatedly and continuously denied or withheld DAA treatment for her, even though she was and continues to be a candidate for DAA treatment under the medical standard of care.

2.      Plaintiff Marty Fitzgerald is currently incarcerated under sentence at the High Desert State Prison in Indian Springs, Nevada where medical care is administered by Defendants. He is in the legal custody and control of Nevada Department of Corrections ("NDOC") and has been diagnosed with chronic HCV. Defendants have repeatedly and continuously denied or withheld DAA treatment from him, even though he was and continues to be a candidate for DAA treatment under the medical standard of care.

3.      Plaintiff Howard White is currently incarcerated at the Northern Nevada Correctional Center in Carson City, Nevada where medical care is administered by Defendants. He is in the legal custody and control of NDOC and has been diagnosed with chronic HCV. Defendants have repeatedly and continuously denied or withheld DAA treatment from him, even though he was and continues to be a candidate for DAA treatment under the medical standard of care.

4.      Plaintiff Stephen Ciolino is currently incarcerated at the High Desert State Prison in Indian Springs, Nevada where medical care is administered by Defendants.  He is in the legal custody and control of NDOC and has been diagnosed with chronic HCV. Defendants have repeatedly and continuously denied or withheld DAA treatment from him, even though he was and continues to be a candidate for DAA treatment under the medical standard of care.

5.      Plaintiff Carl Olsen is currently incarcerated at the Lovelock Correctional Center in Lovelock, Nevada where medical care is administered by Defendants.  He is in the legal custody and control of NDOC and has been diagnosed with chronic HCV. Defendants have repeatedly and

continuously denied or withheld DAA treatment from him, even though he was and continues to be a candidate for DAA treatment under the medical standard of care.

6.      Plaintiff Mitchell Fields is currently incarcerated at the Lovelock Correctional Center in Lovelock, Nevada where medical care is administered by Defendants.  He is in the legal custody and control of NDOC and has been diagnosed with chronic HCV. Defendants have repeatedly and continuously denied or withheld DAA treatment from him, even though he was and continues to be a candidate for DAA treatment under the medical standard of care.

7.      Plaintiff Scott Bedard is currently incarcerated at the Lovelock Correctional Center in Lovelock, Nevada where medical care is administered by Defendants.  He is in the legal custody and control of NDOC and has been diagnosed with chronic HCV. Defendants have repeatedly and continuously denied or withheld DAA treatment from him, even though he was and continues to be a candidate for DAA treatment under the medical standard of care.

8.      Plaintiff Don Savage is currently incarcerated at the Northern Nevada Correctional Center in Carson City, Nevada where medical care is administered by Defendants.  He is in the legal custody and control of NDOC and has been diagnosed with chronic HCV. Defendants have repeatedly and continuously denied or withheld DAA treatment from him, even though he was and continues to be a candidate for DAA treatment under the medical standard of care.

9.      Plaintiffs have exhausted all available administrative remedies.

### DEFENDANTS

10.      The State of Nevada ex rel. Nevada Department of Corrections operates the correctional facilities where all of the Plaintiffs are currently located. The Nevada Department of Corrections is an executive agency within the Nevada government.

11.      Nevada Department of Corrections Director Charles Daniels was appointed by Governor Sisolak on December 2, 2019 and is sued in his official capacity. In this role, he has oversight and authority over all aspects of the management and governance of NDOC. He has overall responsibility for NDOC budget and for ensuring the delivery of necessary medical care for the serious medical needs of all individuals held in NDOC's correctional facilities and contracted correctional facilities. He has participated in decision-making regarding NDOC's

chronic HCV policy, communicated with medical professionals and others regarding NDOC's chronic HCV policy, and has been involved in creating the policy and policies that withhold DAA treatment based on non-medical considerations. At all relevant times with respect to the actions alleged herein, Defendant Daniels has acted and will continue to act under color of state law.

12.     Former Nevada Department of Corrections Acting Director Harold Wickham is sued in his official capacity. In that role, which he held for parts of 2019, he has oversight and authority over all aspects of the management and governance of NDOC. He has overall responsibility for NDOC budget and for ensuring the delivery of necessary medical care for the serious medical needs of all individuals held in NDOC's correctional facilities and contracted correctional facilities. He has participated in decision-making regarding NDOC's chronic HCV policy, communicated with medical professionals and others regarding NDOC's chronic HCV policy, and has been involved in creating the policy and policies that withhold DAA treatment based on non-medical considerations. At all relevant times with respect to the actions alleged herein, Defendant Wickham has acted and will continue to act under color of state law.

13.     Former Nevada Department of Corrections Director James Dzurenda is sued in his official capacity. In that role, which he held until 2019, he had oversight and authority over all aspects of the management and governance of NDOC. He had overall responsibility for NDOC budget and for ensuring the delivery of necessary medical care for the serious medical needs of all individuals held in NDOC's correctional facilities and contracted correctional facilities. He participated in decision-making regarding NDOC's chronic HCV policy, communicated with medical professionals and others regarding NDOC's chronic HCV policy, and was involved in creating the policy and policies that withhold DAA treatment based on non-medical considerations. At all relevant times with respect to the actions alleged herein, Defendant Dzurenda has acted and will continue to act under color of state law.

14.     Defendants Romeo Aranas, M.D. and Michael Minev, M.D. are sued in their official capacities as the respective current and former Medical Directors for NDOC respectively. In these roles, they had oversight and authority over the delivery of necessary medical care for the serious medical needs of all individuals held in NDOC's correctional facilities and contracted

correctional facilities. They participated in developing the policy or practice that withholds or delays DAAs from hundreds of inmates and has proactively or constructively denied inmates access to DAAs under that policy. Defendant Minev directly signed and dated the current version of MD 219. They participated in decisionmaking regarding NDOC's chronic HCV policy, communicated with medical professionals and others regarding NDOC's chronic HCV policy, and were closely involved in creating the policy that withholds or delays DAA treatment based on non-medical considerations. At all relevant times with respect to the actions alleged herein, they acted and will continue to act under color of state law.

15.     The Defendants have statutory authority to implement the relief sought in this Complaint.

## GENERAL ALLEGATIONS

16.     Hepatitis C is a blood-borne infectious disease, which is transmitted through exposure to infected blood.

17.     Hepatitis C is a growing public health crisis both in Nevada and throughout the United States. Approximately 1% of the population are living with HCV active in their bodies and the true prevalence is likely to be even higher. More than 20,000 people in the United States die each year due to liver disease caused by HCV, making it the deadliest infectious disease in our nation. Approximately 85% of individuals with HCV will develop chronic infection, which is typically characterized as a Hepatitis C infection that lasts longer than six months.

18.     Chronic HCV is a disease that damages the liver, with the potential to affect multiple other organs and bodily functions. The CDC reports approximately 40% of all those with chronic HCV will develop cirrhosis. For those with advanced fibrosis and cirrhosis, there is a 1-5% annual risk of hepatocellular carcinoma and a 3-6% annual risk of hepatic decompensation, for which the risk of death in the following year is 15-20% as well as HCV being the leading cause for liver transplant in the US.

19.     Individuals infected with chronic HCV suffer from a range of hepatic (affecting the liver) and extrahepatic (affecting other organ systems) symptoms.

20.     A common hepatic manifestation of chronic HCV infection is fibrosis, the formation of scar tissue in the liver. This scarring of the liver ranges from mild to severe, with the most severe form of fibrosis being cirrhosis. As cirrhosis progresses, more scar tissue forms, making it difficult for the liver to function.

21.     Advanced scarring of the liver is associated with an increased risk of cancer. Cirrhosis is associated with increased rates of liver transplants and increased risk of death.

22.     Once individuals develop advanced liver disease they often require undergo cancer screening at regular intervals for the rest of their lives even after they are cured of their chronic HCV infection.

23.     A significant number of persons with chronic HCV who have no signs of fibrosis or mild fibrosis will still progress to cirrhosis in the absence of DAA treatment.

24.     Currently, there is no way to predict which newly infected patients will develop advanced liver disease.

25.     Liver damage is only one potentially significant consequence of chronic HCV infection.

26.     Chronic HCV may have extrahepatic manifestations that affect other organ systems.

27.     Chronic HCV infection is associated with myocardial infarction, diabetes, decreased cognitive function, fatigue, joint pain, depression, sore muscles, arthritis, various cancers, decreased kidney function, certain types of rashes, and autoimmune disease. These extrahepatic manifestations, among others, can occur irrespective of the amount of fibrosis in the liver.

28.     Delay in treatment can cause irreversible damage to the liver and other vital organs. Because of the many benefits associated with successful HCV treatment, clinicians following the standard of care treat chronic HCV patients with antiviral therapy with the goal of achieving Sustained Virologic Response (SVR), preferably early in the course of their chronic HCV infection before the development of severe liver disease and other complications. SVR status means that the virus becomes virtually undetectable in a patient and is considered to be a de facto cure of the

infection. See *U.S. Dep't of Veterans Affairs, FAQs about Sustained Virologic Response to Treatment for Hepatitis C* (2015), *available at https://www.hepatitis.va.gov/pdf/sustained-virological-response.pdf*.

29.     Liver damage and scarring related to chronic HCV infection ("fibrosis") is measured in a variety of methods. In addition to the physical exam and history, medical professionals following the standard of care use a combination of other blood tests and imaging to determine the stage of liver damage caused by HCV.

30.     Metavir Fibrosis Score ("fibrosis score") measures the degree of inflammation (activity grade A0 to A3) and the degree of fibrosis (Fibrosis State F0 to F4). A score of F0 represents no fibrosis (no scarring), F1 is portal fibrosis without septa formation (minimal scarring), F2 is portal fibrosis with few septa (intermediate scarring), F3 is numerous septa without cirrhosis (severe scarring), and F4 is cirrhosis. A parallel scale of measurement is known as "Ishak Stage," named after one of the pathologists who developed it, and it quantifies fibrosis on an ascending scale of 0-6.

31.     Metavir Scores can be estimated using noninvasive serological testing as well as transient elastography. Liver biopsy is no longer considered the standard of care for staging liver disease. Beyond the limitations of the individual modalities of disease staging, it is important to understand that the progression of liver disease is not linear and therefore it is difficult to predict an individual's progression through the stages of liver damage over time.

32.     Blood tests can provide an "APRI score" determined from a ratio derived from the level of an enzyme in the blood (AST) compared to the AST levels of healthy persons and the number of platelets in the infected person's blood. "APRI" is an acronym for "AST to Platelet Ratio Index." The APRI score provides an imprecise measure of fibrosis or cirrhosis. Generally, the lower the APRI score (in the scientific literature a cutoff of less than 0.5 is often used), the greater the negative predictive value (and ability to rule out cirrhosis), and the higher the value (the scientific literature often uses a measurement of greater than 1.5), the greater the positive predictive value (and ability to rule in cirrhosis); midrange values are less accurate and less helpful.

33.     Chronic HCV constitutes a serious medical need, regardless of the stage of fibrosis or disease severity. Defendants' policies or practices deny necessary and standard medical care for chronic HCV, causing serious bodily and mental harm, as well as creating immediate and substantial risks to the health of Plaintiffs and those similarly situated, including irreparable health risks and harm.

**STANDARD OF CARE FOR CHRONIC HCV**

34.     DAA Treatment is the standard of care for chronic HCV.

35.     The American Association for the Study of Liver Diseases (AASLD) and the Infectious Diseases Society of America (IDSA) jointly publish treatment guidelines that establish the national standard of care for HCV treatment.

36.     The AASLD and IDSA recommend treatment for all patients with chronic HCV infection—regardless of fibrosis score—except for those with a short life expectancy that cannot be saved by DAA treatment, liver transplantation, or another directed therapy. See AASLD/IDSA, HCV Guidance: Recommendations for Testing, Managing, and Treating Hepatitis C (updated May 24, 2018), available at https://www.hcvguidelines.org/sites/default/files/full-guidancepdf/HCVGuidance_May_24_2018b.pdf.

37.     The Centers for Medicare and Medicaid Services (CMS), the federal agency that administers Medicaid, has emphasized the importance of access to DAAs for Medicaid beneficiaries. On November 15, 2015, CMS issued guidance (CMS Notice), advising state Medicaid agencies to include DAAs in their coverage of outpatient prescription drugs and warning against impermissible restrictions. Ctrs. for Medicare & Medicaid Servs., Assuring Medicaid Beneficiaries Access to Hepatitis C (HCV) Drugs (Nov. 5, 2015), https://www.medicaid.gov/Medicaid- CHIP- Program- Information/By- Topics/PrescriptionDrugs/Downloads/Rx-Releases/State-Releases/state-rel-172.pdf. Addressing itself to the Medicaid Act, the CMS Notice observed "some states are restricting access to DAA HCV drugs contrary to the statutory requirements in section 1927 of the Act by imposing conditions for coverage that may unreasonably restrict access to these drugs." The CMS Notice cited as examples of these improper

limitations the requirement of a minimum fibrosis score, drug or alcohol abstinence, and that DAAs be prescribed by specialists.

38.     The CDC endorses the use of these effective medications to reduce HCV infection and transmission rates, thereby enhancing public health and lowering treatment costs to the state in the long run. Medicare and the U.S. Department of Veterans Affairs also utilize coverage criteria consistent with the standard of care, as per AASLD/IDSA guidelines.

39.     Withholding treatment can also increase psychological stressors including anxiety, illness uncertainty (the inability to determine the meaning of illness-related events), and depressive symptoms. With treatment, patients who are cured of chronic HCV report an improvement in their mental well-being.

40.     Defendants have failed to provide DAA treatment to Plaintiffs and similarly situated inmates and continue to fail to provide DAA treatment to Plaintiffs and similarly situated inmates. Indeed, it has been NDOC's policy and practice to deny DAA treatment to all but a select few inmates in violation of the standard of care.

**MEDICAL DIRECTIVE 219**

41.     NDOC has justified its refusal to provide DAA treatment to Plaintiff and similarly situated inmates, and has required medical personnel to ignore their independent judgment and deny treatment based on MD 219, which purports to reflect NDOC's Hepatitis C treatment policy.

42.     The version of MD 219 enacted on May 17, 2017, **Exhibit 2**, did not establish automatic Hepatitis C testing for all inmates. Only "[i]nmate patients who have tested positive for Hepatitis C and have displayed constitutional signs and symptoms may be candidates for treatment." *Id.*

43.     The 2017 version of MD 219 excluded any inmate patient who had an APRI score lower than 2.0 or 1.5 "if there are other findings suggestive of fibrosis/cirrhosis." *Id.* There was no medical justification to support this exclusion from DAA Treatment.

44.     Between 2017 and 2019, the NDOC is believed to have adjusted the exclusionary APRI scores but did not meaningfully revise its policies or procedures.

45.     In November 2019, the NDOC abolished the use of APRI scores as a strictly exclusionary criteria, but instead established a set of priority levels that are likely to be used to function in an identical fashion to the replaced exclusionary criteria. **Exhibit 1**. The 2019 version of MD 219 acknowledges that "all patients with chronic HCV may benefit from treatment, certain patients are at high risk for disease progression and qualify for more urgent administration of treatment." *Id.* The three priority levels that were established are:

a.     Priority Level 1 – High Priority for Treatment – Advanced hepatic fibrosis: APRI > 2.0, Metavir or Batts/Ludwig stage 3 or 4 on liver biopsy, cirrhosis; Liver transplant recipients; HCC; Comorbid conditions associated with HCV; Immunosuppressant medication; and/or Continuity of Care.

b.     Priority Level 2 – Immediate Priority for Treatment – Evidence for progressive fibrosis: APRI score > 0.70, stage 2 fibrosis on liver biopsy; Comorbid Medical conditions; Diabetes melitus; and/or Chronic kidney disease

c.     Priority Level 3 – Low Priority for Treatment – Stage 0 to Stage 1 fibrosis on liver biopsy; APRI < 1; All other cases of HCV infection meeting the eligibility criteria for treatment.

46.     There is no medical justification for delaying DAA treatment to individuals in any of the Priority Levels. There is not a shortage of DAA treatment drugs nor medical professionals as the treatment is typically administered through oral pills.

**NAMED PLAINTIFF ALLEGATIONS**

**A.     Elizabeth Carley**

47.      Plaintiff Elizabeth Carley is 42 years old, and entered NDOC custody in 2012, with a maximum release date of January 13, 2027. Ms. Carley is currently incarcerated at the Florence McClure Women's Correctional Center Facility in Las Vegas, Nevada.

48.     Ms. Carley was diagnosed with chronic HCV in or around 2014.

49.     Defendants have denied Ms. Carley needed medical treatment for HCV.

50.     Ms. Carley was admitted to a Hepatitis C clinic to monitor her liver enzyme levels, but her levels are not regularly monitored.

51.     Ms. Carley has experienced chronic conditions associated with HCV, including liver fibrosis, cirrhosis of the liver, jaundice, fatigue, and abdominal pain.

52.     During the time period that the Defendants continue to withhold treatment, Ms. Carley's chronic HCV may progress, further scarring her liver, further impairing liver function, and putting her at increasing risk of cirrhosis, liver disease, excruciating pain, and death.

53.     Ms. Carley has sought treatment for her chronic HCV on many occasions by filing grievances. Each time, however, prison officials informed her that her enzymes were too low to allow for treatment under NDOC's policies.

54.     Relevant to the instant action, Ms. Carley filed a grievance on July 22, 2016.

55.     Ms. Carley has exhausted her administrative grievances.

56.     No medical reason existed or exists to deny Ms. Carley DAA Treatment.

57.     Defendants, by their policy or practice, have forced the refusal to treat Ms. Carley with DAAs constituting deliberate indifference to her serious medical needs and discrimination under the ADA and a violation of her equal protection rights.

**B.     Marty Fitzgerald**

58.     Marty Fitzgerald is 48 years old and entered NDOC custody in 2002. He is currently incarcerated in High Desert State Prison and serving a determinate sentence with a maximum release date of October 16, 2023.

59.     Mr. Fitzgerald was diagnosed with chronic HCV prior to 2015.

60.     Defendants have denied Mr. Fitzgerald needed medical treatment for HCV.

61.     Mr. Fitzgerald has experienced chronic conditions associated with chronic HCV, including, liver fibrosis, abdominal pain, and nausea.

62.     Mr. Fitzgerald's chronic HCV also causes him great stress and worry. It is extremely difficult for him to know that the disease may be progressively scarring his liver, that curative treatment is available, but the Defendants refuse to treat him.

63.     During the time period that the Defendants continue to withhold treatment, Mr. Fitzgerald's chronic HCV may progress, further scarring his liver, impairing liver function, and putting him at increasing risk of cirrhosis, liver disease, excruciating pain, and death.

64.     Mr. Fitzgerald has sought treatment for his chronic HCV on many occasions by filing grievances. Relevant to this action, Mr. Fitzgerald filed a grievance in or around March 2017.

65.     Mr. Fitzgerald has exhausted his administrative grievances.

66.     No medical reason existed or exists to deny Mr. Fitzgerald DAA Treatment.

67.     Defendants, by their policy or practice, have forced the refusal to treat Mr. West with DAAs constituting deliberate indifference to his serious medical needs and discrimination under the ADA and a violation of his equal protection rights.

**C.     Howard White**

68.     Plaintiff Howard White is 74 years old and entered NDOC custody in 1997.

69.     Mr. White is serving a life sentence, and is currently incarcerated at the Northern Nevada Correctional Center in Carson City, Nevada.

70.     Mr. White was diagnosed with chronic HCV in or around March 1997 while out of custody.

71.     In or around December 1997, when Mr. White entered the custody of NDOC, he was retested for HCV.

72.     Defendants have denied Mr. White needed medical treatment for HCV.

73.     Mr. White has experienced chronic conditions associated with chronic HCV, including Type 2 diabetes, liver pain, fatigue, joint pain, and jaundice.

74.     During the time period that the Defendants continue to withhold treatment, Mr. White's chronic HCV may progress, further scarring his liver, impairing liver function, and putting him at increasing risk of cirrhosis, liver disease, excruciating pain, and death.

75.     Mr. White filed a grievance on January 1, 2016.

76.     Mr. White has exhausted his administrative grievance.

77.     No medical reason existed or exists to deny Mr. White DAA Treatment.

78.     Defendants, by their policy or practice, have forced the refusal to treat Mr. White with DAAs constituting deliberate indifference to his serious medical needs and discrimination under the ADA and a violation of his equal protection rights.

//

**D.**     **Stephen Ciolino**

79.     Plaintiff Stephen Ciolino is 50 years old and entered NDOC custody in 2005.

80.     Mr. Ciolino is serving a life sentence, and is currently incarcerated at the High Desert State Prison in Indian Springs, Nevada.

81.     Mr. Ciolino was diagnosed with chronic HCV and has been denied DAA treatment since at least 2018.

82.     Defendants have denied Mr. Ciolino needed medical treatment for HCV.

83.     Mr. Ciolino has experienced chronic conditions associated with chronic HCV, including persistent fatigue, abdominal pain, and nausea.

84.     During the time period that the Defendants continue to withhold treatment, Mr. Ciolino's chronic HCV may progress, further scarring his liver, impairing liver function, and putting him at increasing risk of cirrhosis, liver disease, excruciating pain, and death.

85.     Mr. Ciolino has grieved the denial of medical treatment for his chronic HCV multiple times since his diagnosis in 2005. Most recently, Mr. Ciolino filed a grievance on December 8, 2018.

86.     Mr. Ciolino has exhausted his administrative grievance.

87.     No medical reason existed or exists to deny Mr. Ciolino DAA Treatment.

88.     Defendants, by their policy or practice, have forced the refusal to treat Mr. Ciolino with DAAs constituting deliberate indifference to his serious medical needs and discrimination under the ADA and a violation of his equal protection rights.

**E.**     **Carl Olsen**

89.     Plaintiff Carl Olsen is 69 years old and entered NDOC custody in 1990.

90.     Mr. Olsen is serving a life sentence, and is currently incarcerated at the Lovelock Correctional Center in Lovelock, Nevada.

91.     Mr. Olsen was diagnosed with chronic HCV and has been denied DAA treatment since at least 2017.

92.     Defendants have denied Mr. Olsen needed medical treatment for HCV.

93.     Mr. Olsen has experienced chronic conditions associated with chronic HCV, including fatigue, nausea, and joint pain. Mr. Olsen's chronic HCV also causes him great stress and worry. It is extremely difficult for him to know that the disease may be progressively scarring his liver, that curative treatment is available, but the Defendants refuse to treat him.

94.     During the time period that the Defendants continue to withhold treatment, Mr. Olsen's chronic HCV may progress, further scarring his liver, impairing liver function, and putting him at increasing risk of cirrhosis, liver disease, excruciating pain, and death.

95.     Mr. Olsen filed a grievance on September 28, 2017.

96.     Mr. Olsen has exhausted his administrative grievance.

97.     No medical reason existed or exists to deny Mr. Olsen DAA Treatment.

98.     Defendants, by their policy or practice, have forced the refusal to treat Mr. Olsen with DAAs constituting deliberate indifference to his serious medical needs and discrimination under the ADA and a violation of his equal protection rights.

**F.     Don Savage**

99.     Plaintiff Don Savage is 51 years old and entered NDOC custody in 2017.

100.    Mr. Savage has a maximum release date of December 2, 2021, and is currently incarcerated at the Northern Nevada Correctional Center in Carson City.

101.    Mr. Savage was diagnosed with chronic HCV and has been denied DAA treatment since at least 2015.

102.    Defendants have denied Mr. Savage needed medical treatment for HCV.

103.    Mr. Savage has experienced chronic conditions associated with chronic HCV, including loss of weight and muscle mass and persistent fatigue. Mr. Savage's chronic HCV also causes him great stress and worry. It is extremely difficult for him to know that the disease may be progressively scarring his liver, that curative treatment is available, but the Defendants refuse to treat him.

104.    During the time period that the Defendants continue to withhold treatment, Mr. Savage's chronic HCV may progress, further scarring his liver, impairing liver function, and putting him at increasing risk of cirrhosis, liver disease, excruciating pain, and death.

105.   Mr. Savage filed a grievance on February 24, 2015.

106.   Mr. Savage has exhausted his administrative grievance.

107.   No medical reason existed or exists to deny Mr. Savage DAA Treatment.

108.   Defendants, by their policy or practice, have forced the refusal to treat Mr. Savage with DAAs constituting deliberate indifference to his serious medical needs and discrimination under the ADA and a violation of his equal protection rights.

**G.   Scott Bedard**

109.   Plaintiff Scott Bedard is 53 years old and entered NDOC custody in 1997.

110.   Mr. Bedard is serving a life sentence, and is currently incarcerated at the Lovelock Correctional Center in Lovelock, Nevada.

111.   Mr. Bedard was diagnosed with chronic HCV since at least 2017.

112.   Defendants initially denied DAA treatment to Mr. Benard in 2017 but ultimately approved and provided Mr. Bedard with DAA treatment as of November 2019.

113.   The delayed approval of DAA treatment has led to chronic conditions for Mr. Bedard associated with chronic HCV, including Type 2 diabetes and hypothyroidism.

114.   Mr. Bedard filed a grievance on November 30, 2017.

115.   Mr. Bedard has exhausted his administrative grievance.

116.   Defendants, by their policy or practice, have forced the delay of treatment to Mr. Bedard with DAAs constituting deliberate indifference to his serious medical needs and discrimination under the ADA and a violation of his equal protection rights.

**H.   Mitchell Fields**

117.   Plaintiff Mitchell Fields is 58 years old and entered NDOC custody in 1993.

118.   Mr. Bedard is serving a life sentence, and is currently incarcerated at the Lovelock Correctional Center in Lovelock, Nevada with a scheduled release date of January 3, 2020.

119.   Mr. Fields was diagnosed with chronic HCV and has been denied treatment since at least 2015.

120.   Defendants have denied Mr. Fields needed medical treatment for HCV.

//

121.   Mr. Fields has experienced medical issues as a result of his untreated HCV, including liver pain. Mr. Fields's chronic HCV also causes him great stress and worry. It is extremely difficult for him to know that the disease may be progressively scarring his liver, that curative treatment is available, but the Defendants refuse to treat him.

122.   During the time period that the Defendants continue to withhold treatment, Mr. Fields's chronic HCV may progress, further scarring his liver, impairing liver function, and putting him at increasing risk of cirrhosis, liver disease, excruciating pain, and death.

123.   Mr. Fields filed a grievance in or around December 2015.

124.   Mr. Fields has exhausted his administrative grievance.

125.   No medical reason existed or exists to deny Mr. Fields DAA Treatment.

126.   Defendants, by their policy or practice, have forced the refusal to treat Mr. Fields with DAAs constituting deliberate indifference to his serious medical needs and discrimination under the ADA and a violation of his equal protection rights.

## CLASS ACTION ALLEGATIONS

127.   Pursuant to Federal Rule of Civil Procedure 23(b)(2), Plaintiffs seek to certify a class of all persons:

a.   Who are or will be, in the legal custody of the NDOC, and

b.   Who have been incarcerated for at least 21 days and have at least 12-weeks remaining on their sentence, and

c.   Who have been diagnosed with chronic HCV, and are candidates for DAA treatment as per the proper medical standard of care,

d.   For whom DAA treatment has been or will be denied, withheld, or delayed based on policies or considerations that deviate from the medical standard of care.

128.   Upon information and belief, Defendants have the ability to identify all such similarly situated class members, through medical and other records in Defendant's possession.

129.   The requirements of Rule 23(a) are satisfied:

a.   *Numerosity*: The class is so numerous that joinder of all members is impracticable. NDOC has reported it has over 13,700 inmates in its custody as of December

17

2018 and expects the total inmate population to increase each year. National estimates suggest that approximately one third of incarcerated individuals have HCV.

b.   *Commonality*: There are questions of law or fact common to the class, including but not limited to: 1) whether HCV is a serious medical need; 2) whether Defendants' policy and practice of not providing HCV treatment constitutes deliberate indifference to serious medical needs in violation of the Eight Amendment; 3) whether Defendants have knowingly failed to provide the necessary staging of HCV patients in accordance with the prevailing standard of care, including the pretreatment testing to determine the severity of the disease; 4) whether Defendants have knowingly employed policies and practices that unjustifiably delay or deny treatment for HCV; 5) whether Defendants have permitted cost considerations to improperly interfere with the treatment of HCV; 6) whether HCV is a disability under the ADA; 7) whether medical services in prison are a program or service under the ADA; and 8) whether Defendants have discriminated against NDOC inmates with HCV on the basis of their disability by categorically denying them medical treatment, while providing treatment for other diseases and conditions such as HIV.

c.   *Typicality*: The claims or defenses of the class representatives are typical of the claims or defenses of the class. The class representatives have been diagnosed with chronic HCV but have been refused treatment, and suffer from the same kind of complications and substantial risk of serious harm that the class members suffer from.

d.   *Adequacy*: The class representatives and class counsel will fairly and adequately protect the interests of the class. The class representatives are committed to obtaining declaratory relief that will benefit themselves as well as the class by ending Defendants' unconstitutional policy and practice. Their interests are consistent with and not antagonistic to the interests of the class. They have a strong personal interest in the outcome of this case and have no conflicts with class members. They are represented by experienced counsel.

130.    The requirements of Rule 23(b)(2) are satisfied, as the party opposing the class has acted and refused to act on grounds generally applicable to the class so that final declaratory relief would be appropriate to the class as a whole.

## CAUSES OF ACTION

### First Cause of Action
**(Declaratory and Injunctive Relief - Eighth and Fourteenth Amendments to the U.S. Constitution via 42 U.S.C. § 1983)**

131.    Plaintiffs incorporate the foregoing paragraphs as if set forth fully contained herein.

132.    Defendants' acts and omissions in their respective official capacities have failed to provide adequate medical care according to the clearly established medical standard of care. This deviation from the standard of care constitutes deliberate indifference to the serious medical needs of Plaintiffs and other similarly situated inmates infected with chronic HCV, thereby establishing a violation of U.S. Const. amend. VIII and XIV, for which 42 U.S.C. § 1983 provides declaratory, equitable, mandamus, and legal remedies.

133.    Defendants know of and enforce the policies and practices described above. They know of Plaintiffs' and the Plaintiff Class's serious medical needs, but intentionally refuse to provide treatment addressing those needs. Defendants know that failure to treat those serious medical needs has harmed Plaintiffs and the Plaintiff Class and continues to place them at substantial risk of serious harm.

134.    Defendants' conscious disregard of the risks facing Plaintiffs and the Plaintiff Class violates all standards of decency and constitutes deliberate indifference to serious medical need.

### Second Cause of Action
**(Declaratory and Injunctive Relief - Americans with Disabilities Act, 42 U.S.C.  §§ 12131, et seq.)**

135.    Plaintiffs incorporate the foregoing paragraphs as if set forth fully contained herein.

136.    The Americans with Disabilities Act (ADA) and its subsequent amendments prohibit public entities from discriminating against persons with disabilities in their programs, services, and activities. 42 U.S.C. §§ 12131–12134.

//

137.   The ADA defines "public entity" as any state or local government or "any department, agency . . . or other instrumentality" of a state or local government. 42 U.S.C. § 12131(1)(A), (B).

138.   NDOC is a "public entity" as defined by the ADA. NDOC has legal custody of hundreds of individuals that have been diagnosed with chronic HCV.

139.   The individual Defendants are responsible for NDOC's policies and practices and are authorized representatives of NDOC.

140.   Plaintiffs each have a disability within the meaning of the ADA. An infection with a potentially deadly communicable virus constitutes a physical or mental impairment that substantially limits several major life activities, including but not limited to eating and toileting.

141.   Each of the Plaintiffs are regarded by Defendants as having a disability because they have been subjected to the Defendants' chronic HCV policies or practices because they are infected with chronic HCV.

142.   The Defendants have policies or practices to address the entire range of serious medical conditions that arise for individuals that are within NDOC's legal custody. In no other similar set of circumstances to an individual living with chronic HCV does NDOC maintain policies or practices that depart from the medical standard of care on the basis of non-medical considerations, as alleged herein.

143.   Plaintiffs are excluded from appropriate medical treatment by reason of their disability. Defendants discriminate against Plaintiffs on the basis of their disabilities by denying or withholding medically necessary treatment for reasons unrelated to the standard of care, as described throughout this Complaint. Defendants have singled out individuals infected with chronic Hepatitis C to be subjected to policies and practices unrelated to the medical standard of care in a manner distinct from Defendants' policies or practices for individuals with other medical needs.

//

//

//

### Third Cause of Action
**(Declaratory and Injunctive Relief - Equal Protection Clause of the Fourteenth Amendments to the U.S. Constitution via 42 U.S.C. § 1983)**

144.     To state an Equal Protection Claim, Plaintiffs must demonstrate that defendants "acted with an intent or purpose to discriminate against the plaintiff based upon membership in a protected class," or that Defendants purposefully treated them differently than similarly situated individuals without any rational basis for the disparate treatment. *Lee v. City of Los Angeles*, 250 F.3d 668, 686 (9th Cir. 2001).

145.     Defendants discriminate against Plaintiffs on the basis of their HCV status by denying or withholding medically necessary treatment for reasons unrelated to the standard of care, as described throughout this Complaint. Defendants have singled out individuals infected with chronic Hepatitis C to be subjected to policies and practices unrelated to the medical standard of care in a manner distinct from Defendants' policies or practices for individuals with other medical needs, including individuals with other infectious diseases.

146.     Defendants discriminate against Plaintiffs on the basis of their HCV status by denying or withholding medically necessary treatment for reasons unrelated to the standard of care, including the requirement that Plaintiff sign an "agreement" that is not related to the standard of care and would result in the denial of appropriate care. Defendants have singled out individuals infected with chronic Hepatitis C to be subjected to policies and practices unrelated to the medical standard of care in a manner distinct from Defendants' policies or practices for individuals with other medical needs, including individuals with other infectious diseases.

147.     Defendants' acts and omissions in their respective official capacities have established a violation of U.S. Const. amend. XIV, for which 42 U.S.C. § 1983 provides declaratory, equitable, mandamus, and legal remedies.

148.     Defendants know of and enforce the policies and practices described above. They know of Plaintiffs' and the Plaintiff Class's serious medical needs, but intentionally refuse to provide treatment addressing those needs and thereby treat Plaintiffs' medical needs as different from other similarly situated inmates.

149.    The fact that Defendants treat Plaintiffs differently from other inmates has no rational basis, and is not reasonably related to the valid goal of maintaining order and discipline among the inmates.

150.    Defendants know that their treatment of Plaintiffs has harmed them and the Plaintiff Class and continues to place them at substantial risk of serious harm.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray that the Court issue the following relief:

A.    A declaratory judgment that Defendants' policy or practice of denying, withholding, or prioritizing DAA treatment for the Plaintiffs and putative class members violates the Eighth Amendment and constitutes deliberate indifference to the serious medical needs of Plaintiffs and putative class members;

B.    A declaratory judgment that Defendants' policy or practice of denying, withholding, or prioritizing DAA treatment for the Plaintiffs and putative class members violates the Americans with Disabilities Act and constitutes deliberate indifference to the serious medical needs of Plaintiffs and putative class members;

C.    An injunction ordering Defendants to: (i) formulate and implement an HCV treatment policy that meets the current standard of medical care, including in identifying and monitoring persons with HCV; (ii) treat Plaintiffs and members of the Class with appropriate DAAs; (iii) provide Plaintiffs and members of the Class an appropriate and accurate assessment of their level of fibrosis or cirrhosis, counseling on drug interactions, and ongoing medical care for complications and symptoms of chronic HCV; and (iv) include in any future contract with any entity to which it delegates its responsibility to provide for the medical needs of class members a provision that requires medical treatment consistent with the Court's Order;

D.    Declaratory and injunctive relief preventing Defendants from discriminating against Plaintiffs and members of the Class, and/or treating them differently than other similarly-situated inmates, based on their HCV status;

E.     Any further appropriate injunctions necessary to prevent future violations of Plaintiffs' and the Class's rights;

F.     Certify that this action be maintained as a class action with a class definition as set forth herein, or alternately as a class action with two or more subclasses as may be appropriate;

G.     Certify Named Plaintiffs identified herein as class representatives and Plaintiffs' undersigned counsel as class counsel;

H.     An order enjoining Defendants from taking any action to interfere with Named Plaintiffs' rights to maintain this action, or from retaliating in any way against Named Plaintiffs for bringing this action;

I.     An order retaining jurisdiction over this matter to ensure that the terms of any injunction are fully implemented;

J.     Award Named Plaintiffs compensatory and punitive damages;

K.     Award Plaintiffs' reasonable attorney's fees, costs, and litigation expenses;

L.     Any and all such further relief as the Court may deem appropriate;

Dated December 9, 2019.

McDONALD CARANO LLP

By  ___/s/ Adam Hosmer-Henner_____
    Adam Hosmer-Henner, Esq. (NSBN 12779)
    Philp Mannelly, Esq. (NSBN 14236)
    Chelsea Latino, Esq. (NSBN 14227)
    100 W. Liberty Street, Tenth Floor
    Reno, NV  89501
    (775) 788-2000

    McLETCHIE LAW
    Maggie McLetchie (NSBN 10931)
    Alina Shell, Esq. (NSBN 11711)
    701 E. Bridger Ave., Suite 520
    Las Vegas, NV 89101
    (702)728-5300

    *Attorneys for Marty Scott Fitzgerald, Elizabeth Carley, Donald Savage, Howard White, Carl Olsen, Scott Bedard, Stephen Ciolino and Mitchell Fields, individually and on behalf of a class of similarly situated persons*

23

**CERTIFICATE OF SERVICE**

I hereby certify, under penalty of perjury, that I am an employee of McDonald Carano and that on this date, I served the within **AMENDED CLASS ACTION COMPLAINT** on the parties in said case by electronically filing via the Court's e-filing system. The participants in this case are registered e-filing users and that service will be accomplished by e-filing to the following e-filing participants:

Aaron D. Ford, Esq.
Douglas Rands, Esq.
Charles Odgers, Esq.
Jared Frost, Esq.
Nevada Attorney General's Office
100 N. Carson Street
Carson City, NV 89701

In addition, a true and correct copy was mailed to the party below via U.S. Mail addressed as follows:

| | |
|---|---|
| Budd Reese, #80466<br>Ely State Prison<br>P.O. Box 1989<br>Ely, NV 89301 | Donald M. Savage, #1004487<br>Northern Nevada Correctional Center<br>P.O. Box 7000<br>Carson City, NV 89702 |
| Howard Lee White, #24575<br>Northern Nevada Correctional Center<br>P.O. Box 7000<br>Carson City, NV 89702 | Carl Henry Olsen, #31147<br>Lovelock Correctional Center<br>1200 Prison Road<br>Lovelock, NV 89419 |
| Scott H. Bedard, #67540<br>Lovelock Correctional Center<br>1200 Prison Road<br>Lovelock, NV 89419 | Stephen Frederick Paul Ciolino, #84670<br>High Desert State Prison<br>P.O. Box 650<br>Indian Springs, NV 89070 |
| Mitchell Fields, #46666<br>Love Lock Correctional Center<br>1200 Prison Road<br>Lovelock, NV 89419 | Marty Scott Fitzgerald, #73049<br>High Desert State Prison<br>PO Box 650<br>Indian Springs, NV 89070 |

Elizabeth Carley, # 1095997
Florence McClure Women's
Correctional Center
4370 Smiley Road
Las Vegas, NV 89115

Ronald J. Mulder, # 72064
Northern Nevada Correctional Center
P.O. Box 7000
Carson City, NV 89702

Ty Thomas, #69806
Northern Nevada Correctional Center
P.O. Box 7000
Carson City, NV 89702

   Dated: December 9, 2019

   */s/ Jill Nelson*
   Jill Nelson

**INDEX OF EXHIBITS**

| EXHIBIT # | DESCRIPTION | NUMBER OF PAGES |
|-----------|-------------|-----------------|
| 1 | Medical Directive 219, Eff. Nov. 15, 2019 | 8 |
| 2 | Medical Directive 219, Eff. May 17, 2017 | 5 |

4829-5114-6670, v. 7