UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

*In re*: HCV PRISON LITIGATION

Case No. 3:19-cv-00577-MMD-CLB

ORDER

**I. SUMMARY**

Plaintiffs Marty Scott Fitzgerald, Elizabeth Carley, Donald Savage, Howard White, Carl Olsen, Scott Bedard, Stephen Ciolino, and Mitchell Fields[1] seek to certify a declarative and injunctive class of similarly-situated people incarcerated—or who will be incarcerated in the future—and in the custody of the Nevada Department of Corrections ("NDOC") who suffer from chronic cases of the Hepatitis C virus ("HCV").[2] (ECF No. 11 (the "Motion").) NDOC recently changed its policy governing the treatment of HCV-positive incarcerated individuals, but Plaintiffs assert the policy's prioritization system conflicts with the medical standard of care and exposes incarcerated people to an unreasonable risk of harm in violation of their Eighth Amendment rights. Because the Court agrees with Plaintiffs that they satisfy the prerequisites for class certification—and as further explained below—the Court will exercise its discretion to grant the Motion and certify a class. The Court further adopts Plaintiffs' proposed definition of the class members and issues for class litigation as noted in the conclusion of this order.

---

[1]The Court consolidated a number of cases for pretrial purposes where HCV-positive incarcerated people challenge NDOC's policy that resulted in them being denied treatment under the Eighth Amendment, and located *pro bono* counsel to represent them in most of the cases. (ECF No. 1.)

[2]NDOC opposes the motion. (ECF No. 19.)

## II. BACKGROUND

### A. Generally

Hepatitis means inflammation of the liver. (ECF No. 19-4 at 2.) HCV is a blood-borne virus transmitted through exposure to infected blood. *See* Center for Disease Control, Hepatitis C Questions and Answers for Health Professionals, https://www.cdc.gov/hepatitis/hcv/hcvfaq.htm (last visited February 12, 2020).[3] About 75% to 85% of people who contract HCV go on to develop chronic HCV, or a HCV infection that lasts longer than six months. *See id.* Over time, HCV damages the liver. *See id.* It can cause fibrosis—the formation of scar tissue in the liver—and cirrhosis, which is severe fibrosis. *See id.* In rare cases, it can also lead to liver cancer. Chronic HCV can also cause other adverse health impacts, such as diabetes, joint pain, depression, sore muscles, arthritis, various cancers, decreased kidney function, rashes, and autoimmune disease. While not all people infected with HCV will develop symptoms, symptoms include fever, fatigue, loss of appetite, upset stomach, vomiting, dark urine, grey-colored stool, joint pain, and yellow skin and eyes. (ECF No. 19-4 at 2.)

Because it is spread through the blood, two common ways of contracting HCV are intravenous drug use, including sharing needles, and unsanitary tattooing. (ECF No. 19-5 at 2.) HCV infection is relatively widespread, especially amongst incarcerated people. "An estimated 12% to 39% of incarcerated persons in North America are HCV-antibody–positive[.]" American Association for the Study of Liver Diseases and the Infectious Diseases Society of America, HCV Guidance: Recommendations for Testing, Managing, and Treating Hepatitis C ("HCV Guidance"), HCV Testing and Linkage to Care,

---

[3]The Court takes judicial notice of the facts on this web page because the Center For Disease Control is a source whose accuracy cannot reasonably be questioned, and the basic information about HCV it provides is not subject to reasonable dispute. *See, e.g.*, *Harris v. County of Orange*, 682 F.3d 1126, 1131-32 (9th Cir. 2012).

1  https://www.hcvguidelines.org/evaluate/testing-and-linkage (last visited February 13, 2020).[4]

Until recently, HCV could only be treated, not cured. (ECF No. 19 at 1.) But HCV can now be treated so effectively it can be considered 'cured' through treatment with direct-acting antiviral drugs ("DAAs"). (*Id.* at 1-2.) "Successful hepatitis C treatment results in sustained virologic response (["]SVR["]), which is tantamount to virologic cure and, as such, is expected to benefit nearly all chronically infected persons." HCV Guidance, When and in Whom to Initiate HCV Therapy, https://www.hcvguidelines.org/evaluate/when-whom (last visited February 13, 2020). The current standard of care as stated in the HCV Guidance thus recommends treating most all HCV-positive people with DAAs. *See id.* "[F]rom a medical standpoint, data continue to accumulate that demonstrate the many benefits, both intrahepatic and extrahepatic, that accompany HCV eradication." *Id.* "Therefore, the panel continues to recommend treatment for all patients with chronic HCV infection, except those with a short life expectancy that cannot be remediated by HCV treatment, liver transplantation, or another directed therapy." *Id.* "Accordingly, prioritization tables have been removed from this section." *Id.* NDOC disputes this. (ECF No. 19 at 2-3.) As further explained below, NDOC's policy for treating HCV includes a prioritization table, which NDOC contends is based on "sound medical judgment." (*Id.*)

**B. Plaintiffs**

Plaintiffs are all incarcerated people in NDOC's custody who are HCV-positive and requested DAA treatment, but were either refused by NDOC officials, or, in the case of Scott Bedard only, were refused for two years, though he is now being treated with the DAA Epclusa. (ECF Nos. 10 at 3-4, 11-17, 11 at 7-11.) Plaintiffs all describe the negative health effects they have experienced because of NDOC's refusal to treat them with DAAs,

---

[4]The Court also takes judicial notice of the facts on the HCV Guidance website, which is akin to an online pamphlet, because the American Association for the Study of Liver Diseases and the Infectious Diseases Society of America are sources who accuracy cannot reasonably be questioned, and the information about HCV the HCV Guidance website provides is not subject to reasonable dispute unless otherwise noted in this order. *See, e.g.*, *Harris*, 682 F.3d at 1131-32.

including the negative mental health impact of knowing that their disease will get worse over time, and that an effective cure exists, but they will not receive treatment. (*Id.*) Plaintiffs primarily seek class-wide injunctive relief, though they also seek individual damages. (ECF No. 10 at 19-23.)

**C. NDOC's Policy**

Plaintiffs more specifically allege that NDOC refused to treat Plaintiffs' HCV with DAAs because NDOC officials determined they did not qualify for DAA treatment under Medical Directive Number 219 ("MD 219"). (ECF No. 10 at 11-17; *see also* ECF Nos. 11-1, 19-1 (copies of the policies)[5].) NDOC agrees that MD 219 governs the treatment of HCV-positive incarcerated people in its custody. (ECF No. 19 at 2-3.)

The most recent version of MD 219 provides that all people in NDOC custody will be tested for HCV (ECF No. 19 at 2-3), which Plaintiffs concede is a step in their desired direction (ECF No. 11 at 6). Plaintiffs also agree that the operative version of MD 219 makes DAA treatment available to more incarcerated people than previous versions of the policy did. (ECF No. 11 at 6.)

However, MD 219 includes three priority levels for HCV treatment. (ECF Nos. 11-1 at 8, 19-1 at 4.) Plaintiffs argue this prioritization system conflicts with the standard of care and exposes incarcerated people to an unreasonable risk of harm, but NDOC argues this prioritization system "guarantees that all HCV patient [sic] will receive DAAs as needed and required to treat their condition, while at the same time providing medical personnel with discretion and flexibility to safeguard that those in a lower level of priority obtain expedited DAA treatment when in the sound judgment of the medical provider examining the patient it is determined that it is medically necessary." (*Compare* ECF No. 11 at 6-7,

---

[5]The most recent versions of MD 219 proffered by the parties have different dates, with NDOC's proffered policy bearing a more recent date, but NDOC represents that there are no material differences between the versions of the policies proffered by the parties. (ECF No. 19 at 3 n.2.) Accordingly, the Court will simply refer to MD 219 throughout this order, remaining cognizant it is referring to either ECF No. 11-1 or ECF No. 19-1.

4

1 | *with* ECF No. 19 at 3.) Plaintiffs counter there is no medical justification for delaying DAA
2 | treatment to individuals in any of the priority levels. (ECF No. 11 at 7.)

The three priority levels are as follows.

Priority Level 1 – High Priority for Treatment – Advanced hepatic fibrosis: APRI > 2.0, Metavir or Batts/Ludwig stage 3 or 4 on liver biopsy, cirrhosis; Liver transplant recipients; HCC; Comorbid conditions associated with HCV; Immunosuppressant medication; and/or Continuity of Care.

Priority Level 2 – Immediate Priority for Treatment – Evidence for progressive fibrosis: APRI score > 0.70, stage 2 fibrosis on liver biopsy; Comorbid Medical conditions; Diabetes melitus; and/or Chronic kidney disease.

Priority Level 3 – Low Priority for Treatment – Stage 0 to Stage 1 fibrosis on liver biopsy; APRI < 1; All other cases of HCV infection meeting the eligibility criteria for treatment.

(ECF Nos. 11-1 at 8, 19-1 at 4.) Incarcerated people categorized as priority levels 1 and 2 are more likely to receive DAAs than those people categorized as priority level 3, who are considered low priority for treatment. (ECF No. 11-1 at 8.) MD 219 also notes that NDOC officials may make exceptions to these criteria on an individual basis, and if there is a compelling need to do so. (*Id.*) In addition, MD 219 lists a number of contraindications for treatment, such as non-adherence to prior therapy, which allows NDOC to refuse DAA treatment to incarcerated people who would otherwise be eligible to receive it under MD 219. (*Id.* at 8-9.)

### III. LEGAL STANDARD

"The class action is 'an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only.'" *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348 (2011) (quoting *Califano v. Yamasaki*, 442 U.S. 682, 700-01 (1979)). The party seeking class certification "must affirmatively demonstrate his compliance with" Federal Rule of Civil Procedure 23. *Id.* at 350. "[C]ertification is proper only if the 'trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied.'" *Id.* at 350-51 (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160 (1982)). The four Rule 23(a) requirements are numerosity, commonality, typicality, and adequacy of representation. *See id.* at 349; *see also* Fed. R. Civ. P. 23(a).

"In addition to satisfying Rule 23(a)'s prerequisites, parties seeking class certification must show that the action is maintainable under Rule 23(b)(1), (2), or (3)." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 614 (1997). Here, Plaintiffs seek to certify a Rule 23(b)(2) class. (ECF No. 11 at 12, 16-18.) A Rule 23(b)(2) class is one where "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole[.]" Fed. R. Civ. P. 23(b)(2). "The key to the (b)(2) class is 'the indivisible nature of the injunctive or declaratory remedy warranted—the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them.'" *See Parsons v. Ryan*, 754 F.3d 657, 687 (9th Cir. 2014) (quoting *Dukes*, 564 U.S. at 350).

In addition to the explicit requirements of Rule 23, an implied prerequisite to class certification is that the class must be sufficiently definite. The party seeking certification must demonstrate that an identifiable and ascertainable class exists. *See Kristensen v. Credit Payment Servs.*, 12 F. Supp. 3d 1292, 1302 (D. Nev. 2014). To satisfy the ascertainability requirement, a class must be determinable from objective, rather than subjective, criteria. *See id.* at 1303. The moving party must also affirmatively demonstrate that he or she meets the above requirements. *See Parsons*, 754 F.3d at 674. However, a court should not "'turn class certification into a mini-trial' on the merits." *Edwards v. First Am. Corp.*, 798 F.3d 1172, 1178 (9th Cir. 2015) (quoting *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 983 n.8 (9th Cir. 2011)).

When a court certifies a class, it must do so in a written order. *See* Fed. R. Civ. P. 23(c)(1)(A). That order must define the class, the class claims, issues, or defenses, and must appoint class counsel under Rule 23(g). *See* Fed. R. Civ. P. 23(c)(1)(B).

**IV. DISCUSSION**

Plaintiffs seek to certify a class of all persons: (a) who are or will be in the legal custody of the NDOC; (b) who have been incarcerated for at least 21 days and have at least 12 weeks remaining on their sentence; (c) who have been diagnosed with chronic

1 HCV and are candidates for DAA treatment pursuant to the proper medical standard of
2 care; and (d) for whom DAA treatment has been or will be denied, withheld, or delayed
3 based on policies or considerations that deviate from the proper medical standard of care.
4 (ECF No. 11 at 12.) The Court will conduct a rigorous analysis to determine whether it
5 should certify this class. *See Parsons*, 754 F.3d at 674. In conducting this analysis, the
6 Court will first address whether the class is sufficiently definite, then addresses each of
7 the Rule 23(a) requirements, then Rule 23(b)(2), and then finally the appointment of class
8 counsel.

### A. Whether the Class is Sufficiently Definite

As mentioned above, any valid proposed class must be ascertainable based on objective criteria, and the "proposed class definition should 'describe a set of common characteristics sufficient to allow a prospective plaintiff to identify himself or herself as having a right to recover based on the description.'" *Kristensen*, 12 F. Supp. 3d at 1303 (citation and internal punctuation omitted). The Court finds the proposed class satisfies this standard. Whether someone is in NDOC's custody, where they are in their sentence, whether they are candidates for DAA treatment, and whether their requests for DAA treatment have been denied are all objective criteria. NDOC records can likely be used to determine potential class members. Moreover, the Court finds that a prospective plaintiff could identify whether she could participate in the proposed class based on these criteria.

NDOC's argument to the contrary is unpersuasive. NDOC basically argues that new inmates will become members of the class—and others will fall out of the class definition—all the time, because new people will arrive, and others will be released, whether through parole or a reduced sentence. (ECF No. 19 at 6.) But NDOC overlooks that Plaintiffs are primarily seeking injunctive relief that would affect all current and future HCV-positive inmates, so there would be no need to make individualized determinations. *See Graham v. Parker*, No. 16-CV-01954, 2017 WL 1737871, at *2 (M.D. Tenn. May 4, 2017) (making the same point in an order certifying a class of HCV-positive incarcerated

people alleging their Eighth Amendment rights were violated by the denial of treatment). Moreover, class certification here will insure against the danger of mootness. *See id.* at 3.

The Court will therefore move on to the Rule 23(a) requirements.

**B. Rule 23(a) Requirements**

    **1. Numerosity**

Rule 23(a)(1) requires that the class be so numerous that joinder of all class members is impracticable. *See* Fed. R. Civ. P. 23(a)(1). The exact size of the class need not be known so long as general knowledge and common sense indicate that the class is large. *See McMillon v. Hawaii*, 261 F.R.D. 536, 542 (D. Haw. 2009); *see also Sherman v. Griepentrog*, 775 F. Supp. 1383, 1389 (D. Nev. 1991) ("'It is not necessary that the members of the class be so clearly identified that any member can be presently ascertained.' The court may draw a reasonable inference of the size of the class from the facts before it.") (citation omitted) (quoting *Carpenter v. Davis*, 424 F.2d 257, 260 (5th Cir. 1970)).

Plaintiffs' estimate, based on NDOC's own predictions regarding its prison population and national statistics on percentages of HCV-positive incarcerated people, is that there are between 1,500 and 4,500 HCV-positive inmates in NDOC's custody at any one time. (ECF No. 11 at 12-13.) "Although this evidence does not establish exactly how many class members exist, Plaintiffs are not required to 'specify an exact number or to prove the identity of each class member, rather, 'the plaintiffs must only show a reasonable estimate of the number of class members.'"" *Postawko v. Missouri Dep't of Corr.*, Case No. 2:16-CV-04219-NKL, 2017 WL 3185155, at *6 (W.D. Mo. July 26, 2017), *aff'd*, 910 F.3d 1030 (8th Cir. 2018) (certifying a class of HCV-positive inmates). Moreover, joinder of this many class members would clearly be impracticable. *See, e.g.*, *Kavu, Inc. v. Omnipak Corp.*, 246 F.R.D. 642, 646-47 (W.D. Wash. 2007) (finding the joinder of 3,000 class members impracticable). NDOC's counterarguments focus on issues of commonality, typicality, and whether the class definition is sufficiently definite. (ECF No.

19 at 5-6.) They are misplaced. The Court finds that Plaintiffs have satisfied the numerosity requirement of Rule 23(a).

### 2. Commonality

"[C]ommonality requires that the class members' claims 'depend upon a common contention' such that 'determination of its truth or falsity will resolve an issue that is central to the validity of each claim in one stroke.'" *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 588 (9th Cir. 2012) (quoting *Dukes*, 564 U.S. at 350). "[A] class meets Rule 23(a)(2)'s commonality requirement when the common questions it has raised are 'apt to drive the resolution of the litigation,' no matter their number." *Jimenez v. Allstate Ins. Co.*, 765 F.3d 1161, 1165 (9th Cir. 2014) (quoting *Abdullah v. U.S. Sec. Assocs., Inc.*, 731 F.3d 952, 962 (9th Cir. 2013)). But "[w]hat matters to class certification ... is not the raising of common 'questions'—even in droves—but rather, the capacity of a class-wide proceeding to generate common answers apt to drive the resolution of the litigation.'" *Dukes*, 564 U.S. at 350 (citation omitted).

Plaintiffs argue this requirement is satisfied because NDOC has subjected them to standardized conduct through MD 219, and though the applicable standard of care suggests that they would benefit from DAAs, NDOC has refused their requests for DAAs because of NDOC's application of MD 219. (ECF No. 11 at 13-14.) Plaintiffs further point out several other issues common to all Plaintiffs. (*Id.* at 13-14.) NDOC counters that Plaintiffs cannot satisfy the commonality requirement because claims of inadequate medical care require individual determinations, and because a class action is unnecessary to litigate the constitutionality of MD 219. (ECF No. 19 at 7-8.) NDOC further points to a number of out-of-circuit decisions where incarcerated plaintiffs lost individual Eighth Amendment deliberate indifference claims regarding HCV treatment in an apparent attempt to argue that Plaintiffs are currently being provided with constitutionally adequate medical care, and to buttress NDOC's argument that each Plaintiff's case necessarily requires individualized inquiry rendering class certification inappropriate. (*Id.* at 8-12.) The Court agrees with Plaintiffs.

9

Though NDOC cites many—and exclusively—out-of-circuit decisions, the Ninth Circuit has rejected the argument that Eighth Amendment healthcare claims brought by incarcerated people are inherently case-specific and necessarily turn on individual inquiries. *See Parsons*, 754 F.3d 657 at 675-85 (rejecting the argument).[6] In *Parsons*, the Ninth Circuit characterized this argument as a "sweeping assertion" that "Eighth Amendment claims can *never* be brought in the form of a class action[,]" which the Ninth Circuit labelled a "fundamental misunderstanding" of the governing law. *Id.* at 675-76. The Ninth Circuit went on to state it has "repeatedly recognized that prison officials are constitutionally prohibited from being deliberately indifferent to policies and practices that expose inmates to a substantial risk of serious harm." *Id.* at 677. And the Ninth Circuit went on to reject the same argument NDOC makes here by explaining that "every inmate suffers exactly the same constitutional injury when he is exposed to a single statewide [] policy or practice that creates a substantial risk of serious harm." *Id.* at 678. The Court must follow *Parsons* and thus reject NDOC's argument.

Indeed, NDOC's argument is particularly unpersuasive because the facts of this proposed class may weigh even more strongly in favor of finding the commonality requirement satisfied than the facts supporting the Ninth Circuit's holding that the commonality requirement was satisfied in *Parsons*. Specifically, there is no dispute that Plaintiffs challenge a single, written policy—MD 219—which dictates care for HCV-positive inmates in NDOC's custody. (ECF Nos. 11 at 5-7, 13-14, 19 at 2-4, 3 n.2.) In *Parsons*, the Ninth Circuit affirmed the district court's certification of an Eighth Amendment deliberate indifference to medical needs class of people incarcerated in Arizona's prison system that challenged "10 policies and practices to which all members of the certified class are exposed." *Parsons*, 754 F.3d at 679. And at least one of these policies was unwritten. *See id.* Thus, logically, members of this proposed class—who challenge a single written policy—have more in common than the members of the class certified in *Parsons*.

---

[6]NDOC's brief does not address *Parsons* (ECF No. 19), even though Plaintiffs rely on it throughout their brief (ECF No. 11), and it is on-point, binding precedent.

10

Further, all Plaintiffs allege they would benefit from DAA treatment but have been denied access to it under MD 219—with the exception of Scott Bedard, who alleges that he has been irreparably harmed because NDOC refused to treat him with DAAs for about two years. (ECF No. 11 at 7-11.) Indeed, Plaintiffs' essential contention is that the medical standard of care requires nearly all HCV-positive people to receive DAA treatment immediately—which is also more effective when used before people get too sick—but NDOC continues to use a tiered approach to care in MD 219 where only the sickest people get DAA treatment. (*Id.* at 4-7, 13.) Those who are not as sick have to basically wait to get sicker. (*Id.* at 5-6.) But waiting to get sicker causes issues like Mr. Bedard's, who alleges that "delayed approval of DAA treatment has led to chronic conditions associated with chronic HCV, including Type 2 diabetes and hypothyroidism." (ECF No. 11 at 11.) And more importantly for purposes of the Motion, all Plaintiffs are similarly situated in that they would benefit, or would have benefitted, from receiving DAAs sooner than MD 219 would allow.[7]

The Court finds that the commonality requirement is satisfied here.

### 3. Typicality

The commonality and typicality requirements, though distinct, tend to merge in many cases. Both requirements aid courts in determining whether maintaining a class is feasible and "whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Dukes*, 564 U.S. at 349 n.5. The question a court must ask when evaluating typicality is "whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class

---

[7]Plaintiffs also share common anxiety related to the fact they know they would benefit from DAA treatment, but are being denied DAA treatment. (ECF No. 11 at 7-11.) This further weighs in favor of finding the commonality prerequisite satisfied. The Court also finds this argument plausible. Being told you are sick, will get sicker, and there is a drug you can take that would cure you, but you cannot have it until you get sicker, could produce significant anxiety. And it is unsurprising that all Plaintiffs and proposed class members would share this anxiety.

11

members have been injured by the same course of conduct." *Ellis*, 657 F.3d at 984 (quoting *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992)). Claims need not be absolutely identical; they need only be "reasonably co-extensive with those of absent class members[.]" *Meyer v. Portfolio Recovery Assocs., LLC*, 707 F.3d 1036, 1042 (9th Cir. 2012) (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998)).

As to this prerequisite, Plaintiffs argue that the "proposed class should be certified because the named plaintiffs are and have been subject to the same policies or practices that have denied or delayed DAA treatment in accordance with the standard of care." (ECF No. 11 at 15.) Defendants counter by reiterating that the constitutionality of MD 219 as applied depends on the specific facts of each individual Plaintiff's case, and then move on to argue that Plaintiffs fail to state a claim because the medical care the NDOC provides to each Plaintiff in line with MD 219 is constitutionally adequate. (ECF No. 19 at 13-15.) The Court again agrees with Plaintiffs.

NDOC's merits argument misses the mark. "Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage." *Parsons*, 754 F.3d at 676 n.19 (quotation and quotation marks omitted). Thus, the Court will not delve too deeply into NDOC's argument that Plaintiffs fail to state a claim at this stage. (ECF No. 19 at 13-15.) As to NDOC's argument that Plaintiffs are not typical because the constitutionality of MD 219 depends on the specific facts of each case, it "does not matter that the named plaintiffs may have in the past suffered varying injuries or that they may currently have different health care needs; Rule 23(a)(3) requires only that their claims be 'typical' of the class, not that they be identically positioned to each other or to every class member." *Parsons*, 754 F.3d at 686. Thus, the Court rejects NDOC's argument that the typicality requirement is not satisfied here.

To the contrary, the Court agrees with Plaintiffs their claims are typical of the proposed class. (ECF No. 11 at 14-15.) Like the proposed class, each Plaintiff has either been denied or delayed DAA treatment under MD 219. (*Id.* at 7-11 (describing the claims of each Plaintiff), 12 (presenting the proposed class definition), 14-15 (making this

argument).) All Plaintiffs allege MD 219 violates their Eighth Amendment rights. (*Id.* at 14-15.) And there can be no real dispute that both the named Plaintiffs and all potential class members are subject to MD 219 because they are in NDOC's custody. (*Id.* at 15.) Further, all named Plaintiffs and members of the proposed class allege that they were denied appropriate treatment for their HCV in violation of their Eighth Amendment rights. (*Id.*) Thus, "Plaintiffs' claims are based on the same legal theories as the class's claims, and Plaintiffs are not in a markedly different factual position than other class members (at least not in a sense that would be relevant for purposes of their claims)." *Hoffer v. Jones*, 323 F.R.D. 694, 699 (N.D. Fla. 2017) (finding the typicality requirement was satisfied in an order certifying a class of HCV-positive incarcerated people).

The Court therefore finds the typicality requirement is satisfied.

### 4. Adequacy of Representation

The adequacy of representation is considered under Rule 23(a)(4) and Rule 23(g). *See Baumann v. Chase Inv. Servs. Corp.*, 747 F.3d 1117, 1122-23 (9th Cir. 2014) (noting that "named plaintiff's and class counsel's ability to fairly and adequately represent unnamed [plaintiffs]" are "critical requirements in federal class actions under Rules 23(a)(4) and (g)"). To determine legal adequacy, the Court must resolve two questions: "'(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?'" *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 566 (9th Cir. 2019) (citing *Hanlon*, 150 F.3d at 1020).

Plaintiffs argue this prerequisite is satisfied because Plaintiffs are similarly situated, both amongst themselves and to other proposed class members, and because they have no interests antagonistic to the class. (ECF No. 11 at 16.) Plaintiffs also argue proposed class counsel are adequate representatives because they have extensive experience with complex and civil rights litigation. (*Id.*) NDOC does not appear to dispute that proposed class counsel are adequate, but argues that the named Plaintiffs have failed to show they are members of the proposed class with legitimate claims because Plaintiffs "have failed

to submit medical records showing that their Hepatitis C condition is serious and that an alleged delay in their medical treatment is causing harm." (ECF No. 19 at 16.) The Court again agrees with Plaintiffs.

NDOC's argument appears to go to typicality, not to adequacy of representation. Further, Plaintiffs' failure to submit medical records does not necessarily show their interests are adverse to the members of the proposed class—the inquiry relevant to this prerequisite. If anything, it could only show Plaintiffs may not be able to prevail on the merits of their claims. But they are not required to prevail on the merits at this stage. *See Parsons*, 754 F.3d at 676 n.19. In addition, NDOC's argument that the named Plaintiffs are not themselves members of their proposed class is really an argument that their claims are not typical of the proposed class. But the Court has already found Plaintiffs satisfy the typicality requirement—and rejected NDOC's arguments in doing so. Thus, NDOC's argument on the adequacy of representation prong is unpersuasive.[8]

As Plaintiffs argue, each of the named Plaintiffs has individually challenged the same policy being challenged in this litigation. And based on their allegations, they are part of the proposed class. Each named Plaintiff is in NDOC's custody, alleges he or she has been diagnosed with chronic HCV, and alleges that he or she is an appropriate candidate for DAA treatment under the applicable medical standard of care, but has been denied or delayed DAA treatment. (ECF No. 11 at 7-11, 16.) Thus, Plaintiffs' interests do not appear adverse to the potential class members.

---

[8]As legal support for its argument, NDOC quotes *Sprague v. Gen. Motors Corp.*, 133 F.3d 388, 397 (6th Cir. 1998). (ECF No. 19 at 16.) But the quote from *Sprague*—which of course does not bind this Court—does not apply here. In the quoted passage, the Sixth Circuit declines to disturb a district court's decision not to certify a proposed class after that district court had rejected the primary claim of the named plaintiffs of the proposed class. *Sprague*, 133 F.3d at 397. But this Court has not already rejected Plaintiffs' primary claim. Plaintiffs may be able to prevail on their Eighth Amendment claim. The Court has not yet ruled. Moreover, *Sprague* only addressed the commonality and typicality requirements of Rule 23(a). *See id.* ("[W]e shall confine our analysis to the commonality and typicality requirements[.]"). Thus, NDOC's reliance on *Sprague* is misplaced in the portion of its brief regarding adequacy of representation. *Sprague* is also an ERISA case, and was merely affirming a district court's decision not to certify a class under an abuse of discretion review. *See id.*; *see also id.* at 392 (mentioning ERISA). In sum, *Sprague* does not support NDOC's argument here.

There also appears to be no dispute that Plaintiff's proposed class counsel are adequate representatives of the proposed class. (*Id.* at 16; *see also* ECF No. 19 at 16 (lacking any argument about counsel); *see also* ECF Nos. 11-3, 11-4 (listing the qualifications of proposed class counsel).)

The Court thus finds Plaintiffs satisfy the adequacy of representation requirement.

**C. Rule 23(b) Requirements**

As noted, Plaintiffs seek certification under Rule 23(b)(2). (ECF No. 11 at 2, 12, 16-18.) The primary role of Rule 23(b)(2) "has always been the certification of civil rights class actions." *Parsons*, 754 F.3d at 686. "[C]ourts have repeatedly invoked it to certify classes of inmates seeking declaratory and injunctive relief for alleged widespread Eighth Amendment violations in prison systems[.]" *Id.*

Plaintiffs rely on *Parsons* in arguing the proposed class satisfies Rule 23(b)(2), and point to four out-of-circuit federal district court decisions where other courts certified classes of incarcerated people contending that inadequate treatment of HCV violated their Eighth Amendment rights under Rule 23(b)(2). (ECF No. 11 at 16-17.) Plaintiffs also argue that the "proposed class satisfies Rule 23(b)(2) because the interpretation and relief from the Defendants' policies and practices would apply to all members of the class." (*Id.* at 17-18.) NDOC replies that Rule 23(b)(2) does not apply to this case because each Plaintiff's case requires "individualized inquiry to determine whether specific injunctive relief is warranted at all[.]" (ECF No. 19 at 17.) The Court again agrees with Plaintiffs.

Through MD 219, NDOC has acted on grounds that apply generally to the whole class. Plaintiffs primarily seek uniform injunctive relief from MD 219. (ECF No. 10 at 22-23.) If MD 219 is unconstitutional, final injunctive relief applying to the entire class would be appropriate. Thus, certification of the proposed class under Rule 23(b)(2) is appropriate. *See Parsons*, 754 F.3d at 688-89. And contrary to NDOC's argument, while MD 219 "may not affect every member of the proposed class . . . in exactly the same way, [it] constitute[s] shared grounds for all inmates in the proposed class[.]" *Id.* at 688. The Court is also persuaded that certifying a Rule 23(b)(2) class is appropriate here in part

because several other district courts have done so under similar circumstances. (ECF No. 11 at 17 (citing those class certification decisions).) Finally, even though the named Plaintiffs seek damages (ECF No. 10 at 23), "a plaintiff's *individual* claim for damages separate from the claims of the class [does not defeat] certification under Rule 23(b)(2)." *Postawko*, 2017 WL 3185155, at *16 (emphasis in original).

Having found that the proposed class satisfies the requirements of Rule 23(a) and Rule 23(b)(2), the Court will exercise its discretion and certify Plaintiffs' proposed class. Though NDOC generally argues that class certification is unnecessary because a single plaintiff could facially challenge the constitutionality of MD 219 (ECF No. 19 at 17-20), "even if class certification is unnecessary here, this Court chooses to exercise its discretion by allowing the case to proceed as a class action." *Hoffer*, 323 F.R.D. at 700. Like the other district courts whose decisions Plaintiffs rely on their briefing (ECF No. 11 at 17), the Court is persuaded a class action is the best way to litigate the constitutionality of MD 219 and determine whether Plaintiffs are entitled to injunctive relief specifying how NDOC should treat HCV-positive people in its custody. The Court includes the definition of the class, along with the class issues to be litigated, *infra* in Section V.

### D. Class Counsel

The Court now briefly addresses the uncontested matter of appointing class counsel. (ECF No. 19 (declining to attack the qualifications of proposed class counsel).) "Unless a statute provides otherwise, a court that certifies a class must appoint class counsel." Fed. R. Civ. P. 23(g)(1). "Under Rule 23(g)(1), the Court considers four factors when appointing counsel: (1) the work counsel has done in identifying or investigating potential claims in the action; (2) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (3) counsel's knowledge of the applicable law; and (4) the resources that counsel will commit to representing the class." *Greene v. Jacob Transportation Servs., LLC*, Case No. 2:09-cv-00466-GMN-CWH, 2017 WL 4158605, at *6 (D. Nev. Sept. 19, 2017).

Lead proposed class counsel Adam Hosmer-Henner and Margaret A. McLetchie were appointed through the Court's *pro bono* program to represent individual Plaintiffs in various cases that the Court consolidated for pretrial purposes back in October 2019. (ECF No. 1.) Since that time, they and their teams have been working diligently to represent Plaintiffs' interests *pro bono*, including by preparing and filing the Motion. They are sufficiently experienced in handling complex litigation, and are sufficiently familiar with the applicable law. (ECF Nos. 11-3, 11-4 (detailing their qualifications).) They both represent that they will commit sufficient resources to this litigation. (ECF Nos. 11-3 at 4-5, 11-4 at 3.) The Court will therefore appoint Adam Hosmer-Henner, Margaret A. McLetchie, and their chosen litigation teams as class counsel.

**V. CONCLUSION**

The Court notes that the parties made several arguments and cited to several cases not discussed above. The Court has reviewed these arguments and cases and determines that they do not warrant discussion as they do not affect the outcome of the motion before the Court.

It is therefore ordered that Plaintiff's motion to certify class (ECF No. 11) is granted.

It is further ordered that the Court certifies a class of all persons: (a) who are or will be in the legal custody of NDOC; (b) who have been incarcerated for at least 21 days and have at least 12 weeks remaining on their sentence; (c) who have been diagnosed with chronic HCV and are candidates for DAA treatment pursuant to the proper medical standard of care; and (d) for whom DAA treatment has been or will be denied, withheld, or delayed based on policies or considerations that deviate from the proper medical standard of care.

It is further ordered that the Court certifies the following issues for class litigation: (1) whether HCV is a serious medical need; (2) whether NDOC's policy and practice of not providing HCV treatment constitutes deliberate indifference to serious medical needs in violation of the Eight Amendment; (3) whether NDOC has knowingly failed to provide the necessary staging of HCV patients in accordance with the prevailing medical standard

of care, including the pretreatment testing to determine the severity of the disease; (4) whether NDOC has knowingly employed policies and practices that unjustifiably delay or deny treatment for HCV; (5) whether NDOC has permitted cost considerations to improperly interfere with the treatment of HCV; (6) whether HCV is a disability under the ADA (Americans with Disabilities Act); (7) whether medical services in prison are a program or service under the ADA; and (8) whether Defendant has discriminated against NDOC inmates with HCV on the basis of their disability by categorically denying them medical treatment, while providing treatment for other diseases and conditions.[9]

It is further ordered that Plaintiffs are hereby named class representatives for this class.

It is further ordered that Plaintiffs' counsel are appointed as class counsel as specified herein.

It is further ordered that the parties must address the issues of notice under Fed. R. Civ. P. 23(c)(2) with Magistrate Judge Baldwin.

DATED THIS 18th day of February 2020.

_____
MIRANDA M. DU
CHIEF UNITED STATES DISTRICT JUDGE

---

[9]These are Plaintiffs' proposed class issues. (ECF No. 11 at 13-14.) NDOC did not propose another set of issues, or otherwise argue against these being the class issues. (ECF No. 19.) The Court also agrees this is a reasonable set of class issues. The Court therefore adopts them.