UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| *In re*: HCV PRISON LITIGATION | Case No. 3:19-cv-00577-MMD-CLB <br><br> ORDER |

**I.   SUMMARY**

Plaintiffs, a class of people incarcerated and in the custody of Defendant Nevada Department of Corrections ("NDOC") infected with the Hepatitis-C virus ("HCV"), allege that NDOC violated their Eighth Amendment rights by declining to treat them with direct-acting antiviral ("DAA") drugs, for non-medical reasons, under the then-effective version of NDOC's Medical Directive Number 219 ("MD 219"). The Court previously certified Plaintiffs as a class. (ECF No. 21 ("Certification Order").) Plaintiffs and Defendant subsequently reached a settlement resulting in significantly expanded testing and treatment of HCV within the NDOC system, in part through modifications to MD 219, and jointly moved for a preliminary approval of a consent decree (ECF No. 61), which the Court preliminarily approved (ECF No. 62). The Court then held a fairness hearing on the consent decree. (ECF No. 77 ("Fairness Hearing").) Because the Court is convinced the proposed consent decree is fundamentally fair, adequate, and reasonable, and as further explained below, the Court approves the proposed consent decree.

**II.   BACKGROUND**

The Court incorporates by reference the factual background it provided in the Certification Order, and does not recite it here. (ECF No. 21 at 2-5.) The Court further incorporates by reference the additional background Plaintiffs recited in their supplement

submitted to the Court in preparation for the Fairness Hearing. (ECF No. 76 at 1-5.) At the Fairness Hearing, both Plaintiffs' and Defendant's counsel voiced their strong support for the Court's approval of the consent decree.

## III. LEGAL STANDARD

The Court must decide whether to approve the proposed consent decree before it has binding effect because a class action may not be dismissed or compromised without a court's approval. *See* Fed. R. Civ. P. 23(e). "Although Rule 23(e) is silent respecting the standard by which a proposed settlement is to be evaluated, the universally applied standard is whether the settlement is fundamentally fair, adequate and reasonable." *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992) (citations and internal quotation marks omitted). Courts in the Ninth Circuit generally consider the following factors in determining whether the settlement is fair, adequate, and reasonable:

> (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a government participant; (8) the reaction of the class members of the proposed settlement.

*Sinanyan v. Luxury Suites Int'l, LLC*, Case No. 2:15-cv-00225-GMN-VCF, 2018 WL 813864, at *2 (D. Nev. Feb. 8, 2018) (citing *In re Bluetooth*, 654 F.3d 935, 946 (9th Cir. 2011)). Courts often refer to these factors as the *Churchill* factors. *See id.* The Court will as well.

## IV. DISCUSSION

The *Churchill* factors favor the Court adopting the proposed consent decree. The Court addresses each of the factors below, slightly rephrased to match Plaintiffs' presentation in their supplement. (ECF No. 76.) But first, the Court makes one preliminary finding. The consent decree is effective upon entry of this order, despite the fact that the State of Nevada has only funded the first year of expanded HCV testing and treatment that NDOC agreed to as part of the consent decree at this point in time. More specifically, the Court asked several questions about ¶ 53 of the proposed consent decree at the

Fairness Hearing, but the Court is satisfied by counsels' responses to her questions. Said otherwise, the Court finds no conditions precedent prevent the Court from approving the proposed consent decree now.

### A. Likelihood of Recovery or Success

As the Court noted in the Certification Order, Plaintiffs challenge a single, written policy they contend worked the same constitutional injury upon them. (ECF No. 21 at 10.) They also all allege they would have benefitted from DAA treatment, but NDOC refused them treatment for cost or other non-medical reasons. The governing Ninth Circuit caselaw therefore suggests Plaintiffs would have prevailed if this litigation continued.[1] *See Parsons v. Ryan*, 754 F.3d 657, 678 (9th Cir. 2014) (stating that every plaintiff suffers the same constitutional injury when they are exposed to the same policy); *Peralta v. Dillard*, 744 F.3d 1076, 1083 (9th Cir. 2014) ("Lack of resources is not a defense to a claim for prospective relief because prison officials may be compelled to expand the pool of existing resources in order to remedy continuing Eighth Amendment violations.") (citations omitted). That said, litigation is necessarily uncertain, and as Plaintiffs point out, at least one district court outside the Ninth Circuit found a similar policy did not violate the constitutional rights of incarcerated people in Tennessee. (ECF No. 76 at 5-6.) But overall, this factor favors approving the proposed consent decree.

### B. Amount and Nature of Discovery or Evidence

The parties conducted written discovery, and Plaintiffs retained an expert who reviewed some of the written discovery, which informed Plaintiffs' approach to negotiating the revised version of MD 219 the parties agreed to as part of the proposed consent decree. (*Id.* at 6.) Further, Plaintiffs "do not believe that further discovery from Defendants would have resulted in a materially different settlement as the settlement was based on

---

[1]Indeed, this Court noted the potential serious constitutional issues with a prior version of MD 219 in deciding to refer a case challenging such policy to the Court's Pro Bono Program for appointment of counsel. *See Griffith v. Aranas*, Case No. 3:16-cv-309-MMD-VPC, ECF No. 47 (D. Nev. Jan. 9, 2018).

publicly available medical documents and expert input." (*Id.*) Thus, to the extent relevant, this factor also favors approving the proposed consent decree.

### C. Settlement Terms and Conditions

As Plaintiffs' counsel approached this factor, it contains several important sub-factors. (*Id.* at 6-9.) The Court agrees with Plaintiffs' counsel that this factor overall favors adopting the proposed consent decree.

But more specifically, the proposed consent decree will benefit the class in two major ways: (a) significantly expanded testing and treatment of HCV within NDOC facilities on an expedited timeline; and (b) it is accompanied by an improved version of MD 219, in the sense that the revised policy will result in more incarcerated people being given access to HCV treatment, because it substantially limits NDOC officials' discretion to deny or discontinue HCV treatment for non-medical reasons. And as Plaintiffs' counsel pointed out at the Fairness Hearing, the two benefits work together. NDOC's commitment to treat particular numbers of incarcerated people each year, and always at a rate that exceeds new cases, reinforces that the practical effect of the new version of MD 219 is that fewer incarcerated people will be denied HCV treatment for non-medical reasons.

Moreover, and as Plaintiffs' counsel outlined at the Fairness Hearing, the revised version of MD 219 agreed to as part of the consent decree contains a number of improvements over the prior version of the policy, which will benefit class members, and weighs in favor of the Court finding the proposed consent decree is fundamentally fair. (ECF Nos. 77 (Fairness Hearing minutes), 78 (demonstrative exhibit showing a side-by-side comparison between the version of MD 219 agreed to as part of the proposed consent decree and the prior version (adopted in November 2019),[2] with changes indicated through highlighting).) The specific changes to MD 219 the Court finds are beneficial to all

---

[2]NDOC made additional (and mostly minor) changes to MD 219 in January 2020. (ECF No. 76-5 at 10.) Plaintiffs' counsel explained that he used the November 2019 version for comparison purposes mainly due to the quality of the copy of the January 2020 version in their records.

class members are: (1) it takes case-by-case discretion away from NDOC officials to treat people with HCV differently for non-medical reasons; (2) it provides that all inmates not previously tested will be tested (in the prior version of MD 219, incarcerated people were only tested at intake); (3) it adds guidance for when an inmate should be retested (the prior version did not provide for retesting); (4) many more people will receive DAA treatment as part of NDOC's commitments reflected in the revised policy; (5) all HCV-positive inmates will receive treatment, regardless of their substance abuse, disciplinary history, or any other non-medical reasons for treatment; (6) it alters the priority system based on APRI scores such that everyone in priority 1 receives treatment within 6 months, and then people in 2 or 3 receive treatment soon thereafter; (7) it provides that all people who have more than 120 days left in their sentence receive treatment, instead of only people who have a year or more left of their sentence; (8) it changes NDOC's policy such that the maximum possible consequence for noncompliance someone can face is that they will get treatment at the end of their particular priority level instead of no treatment at all; (9) it clarifies that a HCV-positive person can now only be denied DAA treatment if a doctor determines it is not medically recommended; (10) it modernizes the contraindications for treatment section to make them more clear, grounded in medical science, and otherwise improves them by removing nonmedical reasons for denying treatment; (11) it provides for treatment of boarders from other jurisdictions regardless of whether that jurisdiction will take financial responsibility for the treatment (before boarders would only receive treatment if their sending jurisdiction agreed to pay for their treatment). (ECF No. 78 (illustrating these changes using highlighting).) In sum, the Court finds the new version of MD 219 agreed to as part of the consent decree will substantially benefit all class members, and thus contributes to the Court's finding that the proposed consent decree is fundamentally fair.

Plaintiffs' counsel also addresses the reasonableness of the attorneys' fees they seek for litigating this case, and for ongoing monitoring while the consent decree remains in effect, under this factor. (ECF No. 76 at 8.) Plaintiffs' counsel took this case, and several

1  individual cases later consolidated for discovery purposes into this one, pro bono. They
2  did not seek any fees in negotiating the initial settlement—to facilitate a settlement that
3  would benefit the class members. (*Id.*) Now, NDOC has agreed to pay them $160,000
4  (along with documented costs), and both the executive and legislative branches of the
5  Nevada state government have signed off on paying them that amount. (*Id.*)

6  The attorneys' fees provided for in the proposed consent decree are more than
7  reasonable. Plaintiffs' counsel have already litigated this case pro bono for over a year,
8  and agree to monitor NDOC's compliance with the proposed consent decree for four years
9  without any seeking recovery of additional fees for monitoring. (ECF No. 61-1 at 9-10, 15.)
10 Plaintiffs' counsel also won their motion for class certification, in which the Court found
11 them adequate representatives and appointed them class counsel. (ECF No. 21 at 13-15.)
12 The fees amount provided in the proposed consent decree is more than reasonable in
13 view of Plaintiffs' counsels' competence and the significant amount of work they have
14 performed—and have agreed to keep performing—in this case.

### D. Recommendation and Experience of Counsel

16 As noted, the Court previously found that both Plaintiffs' counsel and the proposed
17 class representatives were adequate representatives of the class. (*Id.*) Plaintiffs' counsel
18 now recommend the Court approve the proposed consent decree. (ECF No. 76 at 9.) This
19 factor thus also favors approving the proposed consent decree.

### E. Future Expense and Likely Duration of Litigation

21 "In most situations, unless the settlement is clearly inadequate, its acceptance and
22 approval are preferable to lengthy and expensive litigation with uncertain results." *Riker v.*
23 *Gibbons*, Case No. 3:08-cv-00115-LRH, 2010 WL 4366012, at *4 (D. Nev. Oct. 28, 2010)
24 (quoting 4 Alba Conte & Herbert B. Newberg, Newberg on Class Actions § 11:50 (4th ed.
25 2002)); *see also generally id.* (approving proposed consent decree in lawsuit about
26 inadequate medical care within an NDOC facility). That is the case here. There is no real
27 question this case would take some time to get to trial, and the expense would accordingly
28 be much greater than if the Court permits the parties to settle now. Further, as Plaintiffs'

1  counsel points out, given the number of incarcerated people Defendant is agreeing to treat
2  within the next few years as part of the proposed consent decree, it is likely everyone in
3  NDOC custody currently suffering from HCV will be effectively cured before this case
4  would go to trial. (ECF No. 76 at 9.) This factor also favors approving the proposed consent
5  decree.

### F. Recommendation of Neutral Parties

To the extent this factor is relevant, Plaintiffs' counsel notes that Nevada Governor Steve Sisolak and Nevada State Assemblywoman Daniele Monroe-Moreno made public statements in support of the proposed consent decree in the process of approving the allocation of funds so that Defendant can comply with its side of the agreement. (*Id.*) Plaintiffs' counsel further represents their retained expert would testify that the proposed consent decree is beneficial to the class. (*Id.*) The Court agrees that these statements favor approving the proposed consent decree.

### G. Number of Objectors and Nature of Objections

Plaintiffs reported that 13 people objected out of the estimated 2,400 members of the class. (*Id.* at 9-10.) These individuals retain their right to assert their individual claims. Thus, their objections do not substantially detract from the fairness of the proposed consent decree. Moreover, Plaintiffs' counsel generally observes that most people who requested to opt-out appear to have done so to ensure they can maintain their claims for damages in their individual cases. (*Id.*) In fact, because Plaintiffs seek only injunctive relief, individuals who fall within the class would still have the right to assert their own claims for damages regardless of whether they opt-out. The Court thus shares Plaintiffs' counsel's impression of the nature of the opt-out requests. And because all class members can maintain their individual damages actions even without opting out of the class, the Court does find that these opt-out requests reflect adversely on the fairness of the proposed consent decree. Accordingly, this factor also favors approving the proposed consent decree.

///

**H. Presence of Good Faith and Absence of Collusion**

In overseeing this case, the Court has observed substantial good faith on both sides, but no evidence of collusion. Moreover, the proposed consent decree was negotiated over multiple days of arms-length settlement conferences facilitated by Magistrate Judge William G. Cobb, along with some associated status conferences. (ECF Nos. 50, 54, 55, 59, 66.) Magistrate Judge Carla L. Baldwin also presided over a number of hearings between the parties. (ECF Nos. 2, 8, 31, 36, 47, 65.) Neither Judge Cobb nor Judge Baldwin indicated to the Court there was any collusion. Plaintiffs also state the parties negotiated in good faith, but without collusion. (ECF No. 76 at 10.) In sum, the proposed consent decree is the product of arms-length negotiations facilitated by the Court. This factor thus also favors granting the proposed consent decree.

All of the *Churchill* factors favor the Court adopting the proposed consent decree to varying degrees. Having considered these factors, the Court finds the proposed consent decree is fundamentally fair, adequate, and reasonable. The Court accepts and adopts it in full. As the Court did on the record at the Fairness Hearing, the Court commends all parties involved in this litigation for reaching a collaborative solution that will effectively cure many sick, incarcerated people who were previously denied HCV treatment—along with HCV-positive people who will enter NDOC's custody in the future.

**V.  CONCLUSION**

The Court notes that the parties made several arguments and cited to several cases not discussed above. The Court has reviewed these arguments and cases and determines that they do not warrant discussion as they do not affect the outcome of the issues before the Court.

It is therefore ordered that the parties' proposed consent decree (ECF No. 61-1) is accepted and adopted in full.

///

///

///

```
```
Case 3:19-cv-00577-MMD-CLB   Document 79   Filed 10/29/20   Page 9 of 9

The Clerk of Court is directed to administratively close this case upon entry of the consent decree.

DATED THIS 29th Day of October 2020.

_____
MIRANDA M. DU
CHIEF UNITED STATES DISTRICT JUDGE

9