Adam Hosmer-Henner (NSBN 12779)
Philip Mannelly (NSBN 14236)
Chelsea Latino (NSBN 14227)
McDONALD CARANO LLP
100 W. Liberty Street, Tenth Floor
Reno, NV 89501
(775) 788-2000
ahosmerhenner@mcdonaldcarano.com
pmannelly@mcdonaldcarano.com
clatino@mcdonaldcarano.com

Margaret A. McLetchie (NSBN 10931)
Alina Shell (NSBN 11711)
McLETCHIE LAW
701 E. Bridger Ave., Suite 520
Las Vegas, NV 89101
(702) 728-5300
maggie@nvlitigation.com
alina@nvlitigation.com

*Class Counsel*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

\* \* \* \* \*

| IN RE: HCV PRISON LITIGATION | Case No: 3:19-cv-00577-MMD-CLB |
|---|---|
| | **RESPONSE TO QUARTERLY REPORT** |

Class Counsel submits this Response to Quarterly Report (ECF No. 86) to advise the Court of several matters related to the implementation of the Consent Decree (ECF No. 80) that have been raised between the parties but which are still of potential concern to Class Counsel.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.     INTRODUCTION**

Six months after the Effective Date of the Consent Decree, Defendants have successfully tested all class members for HCV that were in NDOC custody as well as screened and prioritized all class members according to the revised MD 219. (ECF No. 86). Additionally, Defendants provided DAA treatment to 140 of the 168 Priority 1 class members by April 29, 2021, with the

balance awaiting the arrival of their medication or further medical testing. It does not appear that any class members have been denied DAA treatment for non-medical reasons.

However, Class Counsel have raised concerns about 1) the relatively low incidence of HCV that has been identified and 2) the rate of treatment of class members with HCV with respect to future deadlines. The parties have held conference calls on several occasions to discuss these issues and Defendants have provided supplemental information. Class Counsel believes that it is important to flag these issues for the Court now to prevent and hopefully avert surprise at the twelve-month mark.

## II. KNOWN INCIDENCE OF HCV

Based on discovery responses and estimates provided by Defendants, Class Counsel expected the number of class members with HCV in NDOC custody to total approximately 2,400. (ECF No. 86 ¶ 35) ("Defendants represent and warrant that, to the best of their current knowledge, as of the Effective Date there are fewer than 2,400 inmates in NDOC custody who have chronic HCV"). As of March 11, 2020, Defendants had identified 1,114 class members in NDOC custody that had been diagnosed with HCV and this number was based on only partial testing of the inmate population. Additionally, epidemiologic studies estimated the prevalence of HCV infection in incarcerated populations as falling between 17.4% to 23.1%. *HCV Testing and Treatment in Correctional Settings,* American Association for the Study of Liver Diseases and Infectious Diseases Society of America (available at https://www.hcvguidelines.org/unique-populations/correctional) (citing to Varan, A.K., et al., *Hepatitis C Seroprevalence among Prison Inmates since 2001: Still High but Declining*, Public Health Reports, 2014:129, 187-195). Based on the inmate population on April 6, 2021 of 10,753, these studies would predict that between 1,871 and 2,484 class members in NDOC custody would have HCV. However, as of April 29, 2021 only a total of 736 class members have been confirmed by Defendants to have HCV.

The total of 736 class members is surprising because Defendants have not treated 378 class members (the difference between 1,114 and 736) with DAA treatment since March 11, 2020 and because Defendants have tested 13,073 inmates as of April 29, 2021, and 806 inmates between January 29, 2021 to April 13, 2021 alone. The parties have discussed several explanations for this

discrepancy, but the arithmetic, at least from Class Counsel's perspective, still does not pencil. One potential explanation is the number of refusals of testing and treatment by the inmate population. Defendants identified 1,743 class members who refused testing for HCV and 42 class members who refused treatment for HCV. While these populations alone would likely not make up the difference between the expected and the identified incidence of HCV, there may be a disproportionate number of class members with HCV within the untested group.

In order to reduce the number of class members who opt-out of HCV testing, Class Counsel have proposed the provision of additional information about HCV testing and treatment. Defendants have agreed in principle to supplement their current literature, Exhibit 1, with additional literature from the Centers for Disease Control that has been identified and suggested by Class Counsel, Exhibit 2. Class Counsel do not believe that the current literature, which cursorily discusses HCV as a disease, adequately informs class members about the benefits of HCV testing and treatment. Class Counsel and Defendants have not reached an agreement on whether or how to provide this supplemental information to the class members who have already refused testing. Class Counsel believe that Defendants should provide this supplemental literature and information to all class members who have refused testing due to the benefits to the individuals and the prison population as a whole from increased testing and treatment. While inmates may opt-out of HCV testing, Class Counsel believe that Defendants have an obligation to adequately counsel these individuals about the nature and benefits of HCV testing and must devote sufficient financial and professional resources to this effort.

**III.  RATE OF TREATMENT**

The Consent Decree required that DAA treatment for HCV be provided to all Priority One class members by April 29, 2021 unless medically contraindicated. (ECF No. 80, ¶ 36). Additionally, a minimum of 1,200 class members must be provided with DAA treatment for HCV by October 29, 2021. (ECF No. 80, ¶ 37).

For the three months between January 29, 2021, Defendants indicated that 85 class members began DAA treatment and an additional 47 class members were on orders to begin DAA treatment. (ECF No. 86, 4). Even excluding these 132 class members or the larger set of the 168

Priority One class members, Defendants still must treat 1,032 class members in the next six months after only treating a maximum of 168 class members in the first six months. Of course, Defendants would not have an obligation to reach the 1,200 figure if everyone in the class with HCV has been treated, but even the current identified population of 736 would leave Defendants with approximately 568 class members remaining to be treated in the next six months.[1] This would require a rate of treatment 3.4 times higher than in the first six-month period.[2] While Defendants have expressed confidence to Class Counsel that the numbers will be reached and have offered some explanations for why the rate of treatment will increase in the next six months, Class Counsel remain skeptical.

If all current class members with HCV receive DAA treatment, then Class Counsel would suggest that the provisions of Paragraph 38 of the Consent Decree should go into effect such that Defendants would "provide DAA treatment to Class Members within NDOC's custody at a rate that, at a minimum, exceeds the HCV infection rate of new inmates who test HCV positive, or who are confirmed to be HCV positive during the intake process." (ECF No. 80, ¶ 38).

## IV.  ADDITIONAL MATTERS

Class Counsel have reviewed the Notice of Violation of Consent Decree filed on May 10, 2021. (ECF No. 87). This individual does not appear on the lists of inmates who have tested positive for HCV that have been provided to Class Counsel. Class Counsel do

//
//
//
//
//

---

[1] Class Counsel is also aware of circumstances where an inmate's symptoms were previously not considered severe enough to warrant treatment prior to the Consent Decree, but have now progressed to the point where they are now too severe to receive treatment. This technically reduces the number of inmates eligible for treatment, but much more significantly underscores the need for the rapid provision of treatment to all eligible class members.

[2] Defendants did prioritize Priority One class members for treatment, but at the expense of the other categories of class members, none of whom received treatment during the prior six months.

4

1  not intend to take further action with respect to the Notice of Violation of Consent Decree at this
2  time.
3       Dated May 14, 2021.

McDONALD CARANO LLP

 */s/ Adam Hosmer-Henner*
Adam Hosmer-Henner, Esq. (NSBN 12779)
Philp Mannelly, Esq. (NSBN 14236)
Chelsea Latino, Esq. (NSBN 14227)
100 W. Liberty Street, Tenth Floor
Reno, NV 89501
(775) 788-2000
ahosmerhenner@mcdonaldcarano.com
pmannelly@mcdonaldcarano.com
clatino@mcdonaldcarano.com

Margaret A. McLetchie (NSBN 10931)
Alina Shell (NSBN 11711)
McCLETCHIE LAW
701 E. Bridger Ave., Suite 520
Las Vegas, NV 89101
(702) 728-5300
maggie@nvlitigation.com
alina@nvlitigation.com

*Attorneys for Plaintiffs*

## **INDEX OF EXHIBITS**

| EXHIBIT # | DESCRIPTION | NUMBER OF PAGES |
|---|---|---|
| 1 | HCV Intake Form | 2 |
| 2 | CDC Pamphlets | 3 |