AARON D. FORD
  Attorney General
D. Randall Gilmer, Bar No. 14001
  Chief Deputy Attorney General
Douglas R. Rands, Bar No. 3572
  Senior Deputy Attorney General
Office of the Attorney General
100 N. Carson Street
Carson City, NV 89701
(775) 684-1150
(775) 684-1108 (fax)
drands@ag.nv.gov
drgilmer@ag.nv.gov

*Attorneys for the
Nevada Department of Corrections*

# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

\* \* \* \* \*

| | |
|---|---|
| IN RE: HCV PRISON LITIGATION | Case No: 3:19-cv-00577-MMD-CLB |
| | **JOINT QUARTERLY REPORT** |

Pursuant to this Court's Order (ECF No. 79) and the Consent Judgment (ECF No. 80) (referred to as "Consent Judgment" or "Consent Decree"), the Parties submit this Joint Quarterly Report ("Report") as part of the Court's ongoing monitoring obligations.

## MEMORANDUM OF POINTS AND AUTHORITIES

**I.    OVERVIEW**

For the third reporting period, the Defendants represent that the fundamental aspects of the Consent Decree are in place and are operating as envisioned. However, there is a delay in scaling up the treatment due what NDOC represents is provider availability. NDOC contends that this has and will be, largely, mitigated by the new directive to write the prescriptions by the providers at each institution. As detailed below, Class counsel has significant concerns about delays and the ability of Defendants to meet the upcoming deadline.

The Parties have been able to work together to improve NDOC's public health education efforts about HCV, which has already resulted in persons who have previously refused testing getting tested.

This Report does not request relief or other intervention by the Court at this time. Class Counsel requests that a status conference be set shortly after the Consent Decree's October 29, 2021, deadline to treat class members.

## II.   STANDARD OF CARE

The Parties have not identified any changes to the medical standard of care for HCV that would warrant alterations of the Consent Decree. The HCV Guidelines of the AASLD and the IDSA were updated on August 27, 2020, and continue to recommend direct-acting antiviral treatment. https://www.hcvguidelines.org.

## III.   TESTING

Paragraph 32 of the Consent Decree requires Defendants to "test all inmates in the custody of NDOC for HCV by December 31, 2020." (ECF No. 80). Defendants report that all inmates that were in NDOC's physical custody as of December 31, 2020, have been tested. Defendants also report that inmates that are new to NDOC or inmates that have returned from out of state placements are still in the process of being tested and are being tested on an ongoing basis.

Paragraph 34 of the Consent Decree requires Defendants to "screen and prioritize all Class Members using the criteria in the revised version of MD 219." (ECF No. 80). Defendants report that all inmates with known test results have been prioritized. Inmates that still need be tested, as set forth above, will be prioritized as the results become known.

Class Counsel has suggested that, given the lower-than-expected number of inmates with chronic HCV, Defendants should not delay the provision of treatment by waiting for the medical tests that may be used for prioritization but not for treatment. Class Counsel understand that Dr. Minev is in agreement with this strategy and has instructed the providers accordingly.

///

///

///

## IV.  ONGOING MONITORING

Paragraph 40 of the Consent Decree (ECF No. 80) requires Defendants to provide information for the following categories:

    a. **The number of inmates tested/screened during the reporting period**

Defendants report that, between April 30, 2021, and July 27, 2021, 1,122 inmates have been tested for Hepatitis C.

Class Counsel has inquired as to the relatively high number of tests for this quarter and are awaiting further information from Defendants. Class Counsel notes that in the Q1 and Q2 status reports, Defendants reported 803 and 806 inmates were tested respectively. (*See* ECF No. 84, p. 3:22; *see also* ECF No. 86, p. 3:21.)

    b. **The number of inmates who tested positive for HCV during the reporting period (including the date on which each inmate tested positive for HCV)**

Defendants report that between April 30, 2021, and July 27, 2021, 74 inmates tested positive for HCV. The attached spreadsheet includes information on the date of each positive test. Exhibit A.

    c. **The number of inmates who began receiving DAA Treatment (with an indication of which type of DAA Treatment was provided and the date on which DAA Treatment was initiated) during the reporting period**

Defendants report that between April 30, 2021, and July 27, 2021, 74 inmates have begun DAA treatment. The attached spreadsheet includes information on the date treatment began and the type of treatment provided. Exhibit B.

    d. **The number of inmates who concluded their course of DAA Treatment (with an indication of which type of DAA Treatment was provided and the date on which DAA Treatment was concluded) during the reporting period.**

Defendants report that between April 30, 2021, and July 27, 2021, 104 inmates completed their treatment while in custody. 5 Inmates unexpectedly paroled mid-treatment between April 30, 2021, and July 27, 2021 Inmates who were on their last month of treatment were issued their last bottle of medication upon discharge and were instructed to follow-up with their primary care

3

providers and/or local health department. However, inmates who paroled during the first two months of treatment were issued the current bottle and instructed to follow-up with their primary care providers and/or local health departments so that they can resume treatment. The attached spreadsheet shows dates of the DAA treatment concluded. (*See* Exhibit B.)

   **e. The number of inmates who obtained SVR (cure) after completion of DAA treatment during the reporting period**

 Defendants report that between April 30, 202, and July 14, 2021, 22 inmates have obtained SVR. Per Infectious Disease Society of America (https://www.hcvguidelines.org/), SVR is measured 12 weeks post treatment. Additionally, 2 inmates have completed their treatment while in custody, but paroled with 12 weeks post-DAA treatment and therefore SVR cannot be verified. 1 inmate completed treatment in April 2021 and was transferred to an out of state facility within 12 weeks post-DAA.

   **f. The number of inmates who were tested after receiving DAA treatment but did not obtain SVR (cure) after completion of DAA treatment during the reporting period**

 Defendants report that between April 30, 2021, and July 13, 2021, there are no inmates who have been confirmed to have failed treatment.

   **g. The number of inmates for whom DAA Treatment was denied or delayed (with information and explanations for each denial/delay) during the reporting period.**

 Defendants report that between April 30, 2021, and July 14, 2021, no inmates have been denied treatment, however, as set forth more fully below, 14 inmates require further testing and/or time before treatment can start.

 Of the 14 inmates who require further work up:
- 1 inmate is refusing to change their current seizure medications that are contraindicated to the current DAA regimen.
- 1 inmate cannot start per Hopes Clinic due to a liver mass.
- 1 inmate is weaning off of contraindicated seizure medications and weaning onto a new seizure regiment not contraindicated to Hep C treatment.

///

4

- 9 inmates are pending additional specialist consultations, lab work, and/or imaging as recommended by Hopes.
- 2 Inmates have completed the required additional imaging or lab work and the results have been sent to Hopes for review and further evaluation.

Class Counsel have requested further information about these 14 inmates and specifically whether there is overlap between this group and the group identified in the prior status reports. For example, in the April 29, 2021 Quarterly Report, there were 10 inmates who were pending further serological testing before beginning treatment. If 9 of these inmates were still awaiting testing as of this report, then this could indicate a structural cause of delay that needs to be addressed.

The monitoring information provided by Defendants to Class Counsel includes confidential information that would merit protection under the Protective Order (ECF No. 43) and the Consent Decree (ECF No. 80). The Parties have prepared and attached redacted versions of these documents to this Report and believe that this is appropriate under the above documents and LR IC 6-1. Class Counsel have received unredacted versions of the documents, but the positions of the Parties are that these documents need not and should not be made a part of the official court record because it would require filing under seal.

V.   **HCV COMMITTEE MEETINGS AND MINUTES**

Under Medical Directive 219, as incorporated into the Consent Decree, "NDOC will maintain an HCV Committee which shall consist of the Medical Director or designee and at least two (2) institutional practitioners. The HCV Committee shall meet at least once per month." MD 219.02(d) (ECF No. 61-1).

Defendants report that the HCV Committee has met on May 5, 2021, June 2, 2021, and July 14, 2021. Copies of the agendas for May 5, 2021, June 2, 2021, and July 14, 2021 are attached. Exhibit C. Minutes from the May 5, 2021, June 2, 2021, and July 14, 2021 are attached. Exhibit D. The NDOC Defendants represent that these minutes reflect approval of all inmates who were considered for treatment.

///

///

## VI. UPCOMING DEADLINES FOR THE NEXT QUARTER

Paragraph 37(a) of the Consent Decree provides that 1,200 Class Members must be provided treatment by October 29, 2021.

Defendants contend that they are largely in compliance with the terms of the consent decree. Defendants represent that all inmates have been tested, new inmates are being tested, existing inmates are being treated, and the Defendants are scheduling pretreatment screening appointments as quickly as possible given provider availability.

In order to complete the remaining treatment by the October 29, 2021, deadline, Defendants report that the providers at all the institutions have been instructed to start writing orders for all of the remaining HCV positive inmates immediately. (*See* Exhibit E ¶ 8 (Declaration of Dr. Minev, Medical Director)) Defendants will then reserve the limited consultations with the infectious disease specialists for those who are medically unstable and require the specialty consultation. Additionally, the Medical Director instructed that all HCV Protocol labs must be completed by July 31, 2021. (*See* Exhibit E ¶ 9) This will allow the order process discussed above.

Class Counsel continue to have significant concerns that Defendants are not on track to satisfy the October 29, 2021, treatment deadline established in the Consent Decree. In the first quarter, 15 inmates began treatment. (ECF No. 84, p. 4:15). In the second quarter, 85 inmates began treatment. (ECF No. 86, p. 4:4-5). In the third quarter, 74 inmates began treatment. *Infra.* Thus, 174 inmates have begun treatment through three-quarters of the year out of the 1,200 individuals required to receive treatment after one-year. Defendants have identified approximately 810 inmates with chronic HCV requiring treatment under the Consent Decree, which would leave approximately 636 inmates who must be treated in the fourth quarter by October 29, 2021. The jump from treating 15, 85, or 74 inmates in a quarter to treating 636 inmates in a quarter appears unlikely to Class Counsel. Defendants have informed class counsel that they have altered their methodology for scheduling and administering treatment and have expressed confidence that they will still meet the deadlines in the Consent Decree, but Class Counsel continue to have the same concerns and have urged Defendants to take all possible steps to expedite treatment.

///

## VII. EDUCATIONAL PLAN

### *Information Provided by Defendants*

The information contained in the CDC handouts has been added to the television channels in each institution with that capability. (*See* Exhibit E ¶ 10.) This information has also been provided to all inmates who previously opted out of treatment, and will be posted at each institution. The Medical Director has also found videos produced by the Veteran's Administration relating to HCV and providing information to the inmates. These will also be added to the television programing at the institutions. (*See* Exhibit E ¶ 11) A copy of the video may be found at: https://www.hepatitis.va.gov/products/video-index.asp. This video is being downloaded to DVD and will be shown at all of the institutions with television capabilities.  (See Exhibit E ¶ 11) The institutions will also provide information upon intake, for all new inmates.  (See Exhibit E ¶ 5) This Court asked the Defendants to look into the option for possible group counseling for all of the HCV positive inmates who have refused treatment or inmates who have refused testing. In discussions with the Medical Director, that would be difficult, as it would not be possible to counsel inmates in a group setting while protecting their privacy concerns.  Many inmates do not want their status made public.

### *Response from Class Counsel*

Class Counsel is pleased that, after being required to do so by the Court, Defendants have agreed to a meaningful public health educational plan. Further, Defendants have advised Class Counsel that the provision of additional educational materials has resulted in at least 10 inmates who have opted-in to HCV testing after initially opting out. Class Counsel is encouraged that the steps they requested, and the Court endorsed in terms of providing inmates with a second opportunity to receive testing after they receive further education has already yielded successes. Class Counsel has requested further quantitative data in order to confirm that all of those inmates who opted out of testing have been provided with the enhanced educational materials and provided with an opportunity for re-testing.

///

///

Further, Class Counsel contends that inmates who agree would be able to provide and participate in peer health education without privacy issues.

Dated August 5, 2021.

AARON D. FORD, Attorney General
 */s/ D. Randall Gilmer*
D. Randall Gilmer (NSBN 14001)
555 E. Washington St., Ste. 2600
Las Vegas, Nevada 89101
(702) 486-3427
drgilmer@ag.nv.gov
Douglas R. Rands (NSBN 3572)
100 N. Carson Street
Carson City, Nevada 89701
(775) 684-1150
drands@ag.nv.gov

*Attorneys for Defendants*


 */s/ Adam Hosmer-Henner*
Adam Hosmer-Henner (NSBN 12779)
Philip Mannelly (NSBN 14236)
Chelsea Latino (NSBN 14227)
McDONALD CARANO LLP
100 W. Liberty Street, Tenth Floor
Reno, NV 89501
(775) 788-2000
ahosmerhenner@mcdonaldcarano.com
pmannelly@mcdonaldcarano.com
clatino@mcdonaldcarano.com

Margaret A. McLetchie (NSBN 10931)
Alina M. Shell (NSBN 11711)
McLETCHIE LAW
602 South Tenth Street
Las Vegas, NV 89101
(702) 728-5300
maggie@nvlitigation.com
alina@nvlitigation.com

*Class Counsel*

## INDEX OF EXHIBITS

| EXHIBIT | DESCRIPTION | NUMBER OF PAGES |
|---|---|---|
| A | Tested Spreadsheet | 4 |
| B | Treatment Status Spreadsheet | 4 |
| C | Meeting Agendas | 4 |
| D | Meeting Minutes | 4 |
| E. | Declaration of Michael Minev, M.D. | 3 |

**CERTIFICATE OF SERVICE**

I certify that I am an employee of the Office of the Attorney General, State of Nevada, and that on this 5th day of August, 2021, I caused to be served, a true and correct copy of the foregoing, **JOINT QUARTERLY REPORT**, by U.S. District Court CM/ECF Electronic Filing on the following:

Adam Hosmer-Henner, Esq.
Philip Mannelly, Esq.
Chelsea Latino, Esq.
McDONALD CARANO LLP
100 W. Liberty Street, Tenth Floor
Reno, NV 89501
ahosmerhenner@mcdonaldcarano.com
pmannelly@mcdonaldcarano.com
clatino@mcdonaldcarano.com

Margaret A. McLetchie, Esq.
Alina Shell, Esq.
MCLETCHIE LAW
602 South Tenth Street
Las Vegas, NV 89101
maggie@nvlitigation.com
alina@nvlitigation.com

*Attorneys for Plaintiff*

/s/ Roberta W. Bibee
An employee of the
Office of the Attorney General